Argued January 25, decided February 23 ; rehearing denied April 26, 1910.

## CLARK *v*. CLARK.

[107 Pac. 23.]

DEEDS—DELIVERY—HUSBAND AND WIFE.

1. Possession of a deed from husband to wife, by the wife, did not constitute a delivery where none was intended by the husband.

DEEDS—DELIVERY—EVIDENCE.

2. Evidence *held* to sustain a finding that a deed from husband to wife and a bill of sale were not delivered to the wife by the husband with intent to pass title.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit in equity by John A. Clark, as administrator of the estate of Elizabeth Clark, deceased; John A. Clark, Edward L. Clark, Lottie Clark-Apperson and Roy Watson Clark, a minor, by Lottie Clark-Apperson, as his guardian *ad litem,* against John Clark, John Clark Saddlery Company, a corporation, and W. T. Clark, to establish a trust and for an accounting.

The defendant John Clark commenced the saddlery business for himself in Portland, Oregon, in the year 1871, continuing the same successfully to the present time. He married his wife, Elizabeth, in 1871. On September 15, 1894, having contemplated a trip to his early home in Europe for the benefit of his health, he executed, in favor of his wife, a deed to certain of his real estate and a bill of sale of his saddlery business, the consideration expressed in such writings being $1 and love and affection. His trip was delayed until the summer of 1896, when he went to Europe and returned late in the fall, improved in health. His wife died June 18, 1901, leaving

surviving her the plaintiffs and the defendant W. T. Clark, the children of John and Elizabeth Clark. The deed and bill of sale were not recorded by Elizabeth Clark in her lifetime, and soon after her death they came into the hands of the plaintiffs, but were not recorded until March 22, 1907. Thereafter, on May 14, 1907, this suit was commenced by the administrator and the children of decedent, as her heirs, to compel an accounting by the defendant John Clark, for the rents and profits of the real estate and the saddlery business. The defendant John Clark admits the execution of the deed and bill of sale, but alleges that they were not delivered, and that he is the owner of the property. The cause was tried upon the evidence in the circuit court, and findings and decree were rendered in favor of defendant. Plaintiffs appeal.

AFFIRMED.

For appellants there was a brief over the names of *Messrs. Bernstein & Cohen, Messrs. Carey & Kerr,* and *Mr. Harrison Allen,* with oral arguments by *Mr. A. Bernstein, Mr. D. Solis Cohen* and *Mr. James B. Kerr.*

For respondents there was a brief over the names of *Messrs. Coovert & Stapleton, Mr. Milton W. Smith,* and *Mr. John H. Hall,* with oral arguments by *Mr. Smith* and *Mr. Hall.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The question for determination is: Were the deed and bill of sale delivered by John Clark to his wife? Plaintiffs rely, primarily, upon the presumption of delivery arising from the possession of the deed and bill of sale by the wife before her death; and, secondly, upon the statements and entries in defendants' books of account.

As to the possession of the deed and bill of sale by Elizabeth Clark, it appears that in December of 1895 or of 1896 she showed them to Mr. Young, in the presence of Collins, and asked for his opinion as to their form. Plain-

tiff, Mrs. Apperson, testified that she saw the papers about a month after they had been executed, and that her mother placed them back in the bureau drawer, and that she saw them afterwards in the drawer. Elizabeth Clark made statements also to several persons to the effect that she had the deed and bill of sale, or that she owned the property. To meet this evidence, defendant John Clark testified that at the time of the execution of the writings he was in poor health and was planning a trip to Europe on that account; that he made out the papers and executed them in the office of M. W. Smith, who placed them in an envelope and handed them to him; that he placed them in his pocket and went home, his wife being with him, and, when he reached home, he placed the papers in his bureau drawer. In testifying Mr. Clark said:

"We went upstairs, and I told her I would leave those in the bureau drawer, and, if anything happened to me on my trip, she would know where to find the papers."

He also testified that the papers remained in the drawer until after his wife's death; that, he never delivered them to his wife, and did not deliver the property nor any part of it to her; that he made the deed and bill of sale to save her the trouble of administration; and that his wife said she hoped she never would have to use them, but would in case of his death.

Donaldson, an expert accountant, who frequently examined the books of account of John Clark's business, testified that Mrs. Clark, a few days after John Clark had left for Europe, sent for him, and that during their conversation she stated to him that "Mr. Clark had made a deed for her protection, but that she would not make any use of it, and it would be all right on his return." Some time after the execution of these writings John Clark changed the name of the saddlery business at the suggestion of his wife, he says, to the name "John Clark & Son," and had letter heads, bill heads, and the sign on the business house

changed accordingly, all with his wife's knowledge. And he continued the management of both the real property and the business as before. The conduct of both Elizabeth and John Clark tends to corroborate defendant's statements as to the purpose of the execution of the deed and bill of sale, and that delivery thereof was not made nor intended, by either of them, but that they were only to become effective in case anything happened to John Clark on the contemplated trip. Possession of the deed and bill of sale, if such she had, could not effect a delivery if none was intended by John Clark, and in every case where the evidence shows that she had the custody of them it was in the absence of her husband and without his knowledge. If he had intended them as a gift to his wife, or to divide the property with her, it is not reasonable that he would have deeded her the bulk of his property, including the saddlery business of which he was and always had been in personal charge; nor would the deed have been kept from the record. It is unimportant that the deed might have been inoperative in case of Clark's death for want of delivery during his life. We are only dealing with conditions as we find them. There was no witness to any act of delivery and Clark's testimony as to what took place concerning the disposition of the writings is conclusive, unless it is overcome by circumstances or subsequent conduct tending to establish a delivery. The whole situation and the circumstances existing at the time of the execution of the deed and bill of sale, as disclosed by the evidence lend credence to his statements, and overcome any presumption that may arise from the execution of the deed and his wife's custody of it.

2. Plaintiffs offered as evidence tending to establish delivery of the deed and bill of sale the account books of John Clark as disclosing a purpose to recognize Elizabeth Clark's ownership of the property, and for that purpose call particular attention to an entry in a journal of the

John Clark business. The entry referred to is on page 149, as follows:

### January 1st, 1896.

374. Mrs. Elizabeth C. Clark ........................98,596 92
    1. To Stock Acct. personal accounts transferred from Main Ledger "John Clark & Son" to personal ledger.

| | |
|---|---:|
| Horse Accounts | 575 00 |
| P. J. Mann Donation Land Claim | 18,831 66 |
| Northwest L. & Trust Co. | 850 00 |
| Chamber of Commerce | 500 00 |
| Ladd & Tilton | 6,000 00 |
| Real Estate | 70,200 00 |
| Life Insurance | 1,640 26 |
| | 98,596 92 |

This account is carried over from the business journal to a new journal, being the first item on page 1, as follows:

### January 2, 1896.

Personal Accounts Transferred from John Clark & Son

Ledger, January 2, 1896.

| | | |
|---|---|---:|
| 7. | Horse Account | 575 00 |
| 9. | P. J. Mann Donation Land Claim | 18,831 66 |
| 10. | Northwest Loan & Trust Co. | 850 00 |
| 11. | Chamber of Commerce | 500 00 |
| 12. | Ladd & Tilton | 6,000 00 |
| 3. | Real Estate | 70,200 00 |
| 5. | Life Insurance | 1,640 26 |

To

1. Elizabeth Clark                                   98,596 92

A new ledger is also opened, the first page commencing:

### Elizabeth Clark.

1896                                    1896

January 2,    J.            98,596 92

Accounts are also opened in it under the titles, "Horse Account," "Northwest Loan & Trust Co.," "Ladd & Til-

ton," "Life Insurance," "P. J. Mann Donation Land
Claim," "Chamber of Commerce," "Real Estate," and
many others.

The entry in the business journal and the one in the
new journal, above set out, do not even tend to corrob-
orate the presumption of delivery of the deed as contended
by plaintiffs, and there is only one item contained therein
that can by any possibility have reference to any property
described in the deed or bill of sale, and that is, "Real
Estate, 70,200.00," and there is nothing in the evidence
showing directly that the property is the same in both.
On the contrary, the proof tends to show that three items
of real estate are included in that item, valued at $15,700,
that are not in the deed.   This new account was not
opened until more than 15 months after the date of the
deed, and makes no reference to it.   Counsel for plaintiffs
lay stress upon the term "personal accounts" used in the
entry as meaning Elizabeth Clark's personal accounts, but
it will not bear such a construction.   They refer to the
personal accounts of John Clark.   Without any name or
heading in the new journal to indicate the ownership of
the book or business, the first entry begins "January 2,
1896."   Then follow seven items which represent seven
separate accounts taken from the business ledger, but
having no reference to the business, being the personal
affairs of John Clark, no one of which was a personal
account of Elizabeth Clark.   Nor do they refer to the
property described in the deed or bill of sale, except that
probably the item "real estate, 70,200.00" included the
real estate described in the deed with other real estate.
This item had been carried in the business ledger since
1893, and this statement of items, which is taken from
page 149 of the business ledger, appears there as "per-
sonal accounts transferred from main ledger, 'John Clark
& Son,' to personal ledger," followed by seven items as in
the new journal.   There is no contention by plaintiffs that
John Clark by these entries or otherwise made a gift of

this property (except the land described in the deed) to his wife, and the deed does not cover much more than one-half of it. The account in no manner refers to the deed or bill of sale. On the contrary, it appears that it was not an effort to make a separate account in Elizabeth Clark's name to cover her separate property, but, as testified by Collins, it separated the saddlery business, which went on as before in the name of John Clark & Son, from the other matters of John Clark, and, although the plaintiffs are claiming that the business was also transferred by the bill of sale to Elizabeth Clark, it was not put in her name. The purpose of the new ledger and journal and the change in the method of keeping the accounts are made plain by the manager and bookkeeper. The compensation of Collins, the manager of the business, included a per cent of the profits of the saddlery business, and, as the former system of keeping the accounts made it difficult to ascertain the profits of the saddlery business, the change was made to segregate that business from all of Clark's other business. Collins said:

"Prior to that, the business was all mixed up, the real estate was mixed in with the business, and we could not tell heads or tails as to what the business was doing, or what the real estate was doing; and so the suggestion was to segregate the two accounts and place the real estate account and everything not pertaining to the business of John Clark & Son into one account and leave the business and things pertaining to the business in the other account."

But when he said, "the books were changed to segregate the accounts of John Clark & Son, so far as the business was concerned, into the real estate account of Elizabeth Clark, as shown by the deed," and that this was "after these deeds were presented and looked over and this bill of sale," he is not borne out by the entries, nor by his own statement above quoted. The form of the entry was directed by Collins and made by the book-

keeper, Daugherty, who said the change in the books was made to segregate the accounts not connected with the business from those which were connected with it. The name of Elizabeth Clark at the top of the first page of the new ledger has red lines drawn through it, and the name of John Clark is written above it. The name "Elizabeth Clark" is not written at the top of that page as the name of the owner of the book or set of books of which that is the ledger, but as the name in which that account is carried in exactly the way the name "real estate" is written at the head of page 3, as the name in which that account is carried, and likewise each account in the book. In the "loss and gain" account, page 36, the balance each year, after 1902, is debited to "Estate of E. Clark" in red ink, and in several of these entries the letter "E" has been erased and "J." inserted. All of these changes were made by Clark's bookkeeper, Mann, and, when asked about it, said it was done "to correct a previous error on my part in carrying the account as I had been carrying it." He said he made the change after consulting Donaldson, the accountant, and that John Clark knew nothing about it. This was evidently not done to cover up any thing, as it was done in a bungling manner, and is conspicuous rather than hidden. Placing this account originally in the name of Elizabeth Clark was the work of an incompetent bookkeeper. If the intention was to put the transactions arising out of the property described in the bill of sale and deed in her name, the account should have included nothing else and should have identified the source of the title. However, we deem these erasures immaterial to the issues here. It clearly appears that the account was intended as the personal account of John Clark and the disclosures of the books, of the form of the entries, do not in any manner tend to establish the delivery of the deed and bill of sale prior to the death of Elizabeth Clark, and these con-

Sig. 8

clusions dispose of the suit adversely to the contention of plaintiffs.

The decree of the circuit court is affirmed.

AFFIRMED.