Argued May 17; affirmed July 6; rehearing denied
September 6, 1939

## O'CONNELL *v.* O'CONNELL ET AL.

(91 P. (2d) 1107)

In Banc.

*Wm. G. Dunlap*, of Portland, for appellants.

*Oglesby Young*, of Portland, for respondent.

BEAN, J. This is a suit to set aside a deed from Dennis O'Connell and Clara R. O'Connell to Dennis O'Connell, one of the named grantors. The deed is undated and is not witnessed. The circuit court rendered a decree cancelling the deed, and defendant Allen O'Connell, executor of the estate of Dennis O'Connell, deceased, and Agnes O'Connell, his wife, appeal.

In the summer of 1927 the plaintiff and her then husband, Dennis O'Connell, purchased all of lots 8 and 9 and the east five feet of lot 10, all in block 18, Hanson's Second Addition to the city of Portland, Multnomah county, Oregon. The north half was conveyed to Dennis O'Connell; the south half was conveyed to Dennis O'Connell and Clara O'Connell, as husband and wife. These two deeds appear to have been made simultaneously. They bear the same date and were recorded on the same day. Soon after acquiring this property, the plaintiff and her husband borrowed from the Equitable Savings & Loan Association of Portland, Oregon, $30,000 to use in constructing a three-story apartment house on the west 65 feet of the land, which was thereafter constructed. This loan was evidenced by a promissory note, bearing interest at the rate of 7 per cent, made by plaintiff and her husband, secured by a first mortgage on the premises. They continued to operate this apartment house, and in the latter part of the year 1936 owed a balance on the mortgage, held by the loan association, of approximately $18,000.

Dennis O'Connell was the father of Allen O'Connell and Clara R. O'Connell is the stepmother.

Plaintiff and her husband conceived the idea that they might be able to refinance the loan at a lower rate of interest and at smaller monthly payments. They discussed this matter with Allen O'Connell, one of the

defendants, and they either enlisted his services or he volunteered to assist them in procuring a new loan, and Allen O'Connell proceeded accordingly. His quest for a loan was successful. The Portland Trust Company made a new loan of $18,500, bearing interest at the rate of 5 per cent per annum, and providing for smaller monthly payments. This transaction was consummated on or about February 23, 1937. The proceeds of the loan were disbursed in paying the balance due the Equitable Savings & Loan Association, the incidental expenses of the loan and some other charges, which left an excess over the Equitable Savings & Loan Association's requirements in the hands of the Portland Trust Company, amounting to $634.28, for which the Portland Trust Company issued its check, payable to Dennis O'Connell and Clara O'Connell, so that the signature of both were required in cashing the check.

On March 3, 1937, approximately 10 days after the deal with the Portland Trust Company was fully consummated, Allen O'Connell filed for record with the county clerk of Multnomah county the deed here involved. The instrument was, at the instance of Allen O'Connell, recorded on the day it was filed, and, pursuant to Allen O'Connell's direction, was mailed and delivered to Allen O'Connell at his home in Portland. He has ever since retained the deed in his possession, until it was filed as defendant's Exhibit 2 at the trial in the lower court.

On June 24, 1937, Dennis O'Connell executed his last will and testament, naming Allen O'Connell as executor, and on August 19, 1937, Dennis O'Connell died. Thereafter, on petition of Allen O'Connell, the will was admitted to probate. The will devised and bequeathed to Clara R. O'Connell, during her lifetime

only, one-half the net income of all real property of which he died seized. He devised and bequeathed to his daughter, Doris O'Connell Owley, an income of $50 per month, payable only from and after his wife's death, total payments in all not to exceed $5,000, said income to be payable only out of the net income from his real property. By the will he devised and bequeathed to his son, Allen O'Connell, all of his real and personal property and the management and control thereof, subject only to the income payments above set forth.

If the deed in question is effective and valid, it would give Allen O'Connell practically all the real estate of the testator, Dennis O'Connell.

The issue involved in this suit is the validity of the deed from Dennis O'Connell and Clara R. O'Connell to Dennis O'Connell. Doris O'Connell Owley, daughter of Dennis O'Connell, and Cornelius Owley, her husband, were made parties defendant. They have not appeared in the suit and their default was entered in the court below on March 4, 1938.

Allen O'Connell testified that he was 44 years of age, that he had been admitted to practice law in the state of Oregon and had practiced that profession several years. The record shows that during all the time herein referred to Allen O'Connell occupied a fiduciary and confidential relation toward his father and his stepmother. Defendant Allen O'Connell, while in search of the loan in behalf of his father and stepmother, claims to have learned what he had previously suspected, that there was some mix-up in the title to the apartment property, and this information or suspicion he related to his father and stepmother. The only mix-up that appears was that the south one-half of the lots was held by Clara O'Connell and Dennis O'Connell,

her husband, as an estate by the entirety, which was a very wise arrangement. Allen O'Connell testified that he found out what he termed a mix-up while this application for the loan from the Portland Trust Company was pending, that he knew in case of his father's death, without this deed in question, the property would go to his stepmother. As to this he testified as follows:

"Q. Then the purpose of getting this deed from her was to divest her from her interest in that property?

A. No, it was not.

Q. What was your object in getting it?

A. I had no object other than following out the wishes of my father and stepmother, at their request.

\* \* \* \* \* \*

Q. Why did you go and have the deed drawn up?

A. Because they asked me to.

Q. Who did that?

A. My stepmother and my father, both of them.

Q. When did they ask you to do that?

A. It was approximately a week following the closing of the Portland Trust Company's loan.

Q. She just voluntarily wanted to give you all she had?

A. Her attitude was that she and my father wished to make me their heir, that my wife and I would have everything sooner or later, anyway. That was her attitude."

Allen O'Connell testified that several days after the consummation of the Portland Trust Company loan he repaired to the office of his attorney, Mr. Dunlap, and without the presence of either Clara O'Connell or Dennis O'Connell he engaged Mr. Dunlap to prepare this questionable deed; that he did this in compliance with the request of both Clara and Dennis O'Connell. Mr. Dunlap testified, in substance, that he had known

Allen O'Connell for about 24 years, and that he had prepared and delivered the deed to Allen O'Connell; that he had never known Dennis O'Connell except in a general way, but had a dim recollection of having met Dennis O'Connell "years and years ago."

Soon after Mr. O'Connell's death Mrs. O'Connell, accompanied by her sister, repaired to the courthouse where Mrs. O'Connell for the first time learned that this deed had been recorded and certified to by Mr. Staub as a notary. They soon thereafter called on Mr. Staub at his office. We quote from the plaintiff's testimony:

"Q. Relate what conversation you had with Mr. Staub when you went there.

A. I asked him if I had been there within the last few days or if I had signed any deed, and he got to thinking, and he says, 'Well, come to think, A. W. O'Connell came into my office'—

Q. That is Allen, is it?

A. Yes,—'and asked me to come to the car. He says, "My father is lame." He said, "Bring your stamp out," and he says, "I want you to stamp some papers for me," ' and so Staub thought, well, it is all right, and he went out, and I said, 'Did you see me in the car?' and he got to thinking and he said, 'No, I can't say that it was you. There was some woman there but I can't say that it was you,' and I says, 'Well, I know nothing about that.' I says, 'I see it is on record, this fresh deed,' and I says, 'I have signed no deed here and I wasn't at your office,' and he says, 'No, I don't think you was; no, you wasn't, but there was some woman in the automobile,' but he says, 'I don't think it was you,' and that is about all that was said as far as I remember.

Q. And then you left there.

A. Yes, I left there.

Q. When did you next see Mr. Staub?

A. Oh, I don't know; a month or two after I met him on the street. I don't know as there was much said. About all we said about that deed was at that time.

Q. You started to investigate this matter then, did you?

A. Yes, I went with Mr. Olmstead, the lawyer, and we examined the records together. I knew that I hadn't signed no deed; I knew there was something wrong, and I employed a lawyer."

Plaintiff's testimony in regard to what occurred at the notary's office is corroborated by that of her sister, Mrs. Schiffen. Allen O'Connell testified that on March 3 he "picked up" his father and stepmother and conveyed them to the office of Mr. Staub and that the deed was then and there signed and acknowledged by both Dennis and Clara O'Connell. The fact that Allen O'Connell and his father, accompanied by a woman, appeared in front of the office of Mr. Staub on that date, is not denied, but what actually occurred on that occasion is in dispute. The identity of the woman who accompanied Allen O'Connell and his father is a question. Clara O'Connell has repeatedly sworn while testifying in the case that it was not she, and that she had not been at the office of Mr. Staub for more than a year and a half prior to March 3, 1937.

No reflection is cast upon Mr. Dunlap on account of writing the deed. Plaintiff suggests that if the O'Connells had gone to Mr. Dunlap, before certifying to the acknowledgment, he would have ascertained who the grantors were and he would have explained to them the contents of the deed, and that Allen O'Connell knew this. He also knew Mr. Staub. He states that Mr. Staub had done notary work for the family before. Plaintiff believes that this deed was prepared by Mr. Dunlap several days or weeks before the 3rd of March, and

the circumstances strongly tend to show that the deed was not signed or acknowledged in Mr. Staub's office. Mr. Staub is not certain whether the parties went into his office or whether he took the acknowledgment in the car. He explains that all that is necessary in taking an acknowledgment is that the parties sign the instrument.

An expert witness testified that the signature of Mrs. Clara O'Connell on the deed in question was the same as her admitted signature made before the court.

It is plaintiff's theory that if she had signed the deed at all, it was pending the negotiations with the Portland Trust Company, that during that transaction she may have signed her name to several papers without suspicion of anything irregular.

The case depends upon the truthfulness or untruthfulness of the testimony of plaintiff Clara O'Connell and that of the defendant Allen O'Connell. The trial court was in a much better position to determine which of these parties was telling the truth than is this court from the cold record. It is apparent from the record and the circumstances that Dennis O'Connell, the father of Allen O'Connell, was old and feeble, and if the title of the property was held in his name under the provisions of the will it would redound to the benefit of Allen O'Connell without any question. The trial judge, in his opinion, refers to the matter as follows:

"The consideration recited is '$10,000 to them in hand paid by Dennis O'Connell,' and the evidence reveals nothing further in this connection, except the plaintiff denies any knowledge of any consideration along with all other knowledge of the execution of said deed or that such a deed was in existence or ever had existed, and denies, also that she ever at any time saw such a deed or signed any paper whatever conveying

this property, and also denies she ever saw her husband sign same or ever saw his signature on any such instrument, and she also denies the purported signature thereon of herself, claiming it is a forgery and not genuine. However, the court at the trial took the signature of plaintiff and then had her compare her concededly genuine signature with her signature on the deed and she seemed to weaken to some extent, at least to partially agree that there was perhaps a resemblance or similarity between the signature on the deed and the one by her just made. And she also claims she never acknowledged to the notary public any such execution of the deed, and, while the notary testified that he took the acknowledgment of both grantors to the deed, he did not have such knowledge of the details of the execution of the deed by the grantors as indicated the execution had been with that frankness and openness and freedom of action all around that the court feels should attend at all times such an important if not solemn ceremony. That indicated that the notary was anxious to get off the witness stand and have the thing over. And another matter in connection with the notary was his failure to make such an entry in his own little notebook where he keeps such things of the transaction as it was, but made an entry 'Papers signed Dan O.Donnell and wife—50.', while in connection with numerous other deeds on which he had taken and entered his certificate of acknowledgment he has, as shown in the little book Defendants' Exhibit 5, made entry almost unanimously of the word 'Deed', presumably where a deed was acknowledged, and other reference where other papers were attested in some way.

The defendant Allen O'Connell as Executor and in person testified that the deed was given him because he had provided his father with $10,000. The court expected at the time the evidence was offered there would accompany it some corroborative side lights reflecting support of such asseveration, but it did not appear, and in the court's mind such corroboration must be available if such statement is correct. A transaction of that kind is of consequence. How, for instance, was it done,

by check or cash? Where was the money kept, and how, before and at time of transfer to the father? If in the bank, why not produce the bank record of such transfer? What was the loan for, if a loan? What did the father do with it, and when and how? All these questions and many more creep into the court's mind when these matters are being inquired into of the witness, and the statements may be true, but as convincing evidence they fail to convince or carry conviction to one's mind.''

Allen O'Connell stated that he executed a mortgage on his property to obtain the $10,000 loan. No evidence of such mortgage was introduced.

██ The question as to whether the plaintiff signed the deed is, of course, important, but it is not decisive of this case. There are other requisites equally important to the validity of a deed. A deed cannot be sustained as a gift unless it was so intended by the donor. If the deed was never knowingly delivered by the grantor, Mrs. Clara O'Connell, it is not effective.

It is said by this court in the case of *Jenkins v. Jenkins*, 66 Or. 12, 17, 132 P. 542, as follows:

"A gift obtained by any person standing in a confidential relation to the donor is *prima facie* void, and the burden is thrown upon the donee to establish to the satisfaction of the court that it was the free, voluntary, unbiased act of the donor. A court of equity, on the grounds of public policy, watches such transactions with a jealous scrutiny, and to set them aside it is not necessary to aver or prove actual fraud, or that there was such a degree of infirmity or imbecility of mind in the donor as amounts to legal incapacity to make a will or execute a valid deed or contract.''

In *Gilmore v. Burch*, 7 Or. 374, 33 Am. Rep. 710, the syllabus reads:

"Where one occupies a confidential or fiduciary relation to another, as that of guardian and ward, at-

torney and client, or the like, where the donee or grantee is supposed to exercise an unusual or commanding influence over the grantor, courts of equity will set aside the conveyances, unless the grantee can show that the transaction was fair and without fraud or undue influence."

In *Fischer v. Peters,* 147 Or. 426, 441, 34 P. (2d) 305, it was held that a stepdaughter of the deceased, in a suit by the administrator for an accounting, had the burden of proving by clear and convincing evidence receipt of a gift from the deceased, where the deceased was aged and infirm and had placed herself in the stepdaughter's care.

In *Lay v. Proctor,* 147 Or. 545, 34 P. (2d) 331, the syllabus reads:

"Gift obtained by person standing in confidential relation to donor is prima facie void, casting burden on donee to establish to satisfaction of court that it was free, voluntary, unbiased act of donor."

In *Clough v. Dawson,* 69 Or. 52, 59, 133 P. 345, 138 P. 233, it is recorded:

"Fraud is a question of fact. It is generally proved by circumstantial evidence, and may be established by inference, like any other disputed fact. Nor is direct and positive proof essential to the establishment of fraud. It is always permissible to prove it by any circumstances from which it may follow as a legitimate inference; this class of evidence in many instances being the only proof available." Citing *Porter v. O'Donovan,* 65 Or. 1, 130 P. 393; *Kabat v. Moore,* 48 Or. 191, 198, 85 P. 506.

The court said in *Rowe v. Freeman,* 89 Or. 428, 435, 172 P. 508, 174 P. 727, as follows:

"* * * If a fiduciary relation existed as contended, the burden of proof devolved on the defendants to sustain the transaction."

■ We think, under the circumstances and evidence in this case, the burden devolved upon Allen O'Connell to sustain the deed in question, and he has failed to show by convincing evidence that the deed was executed knowingly by Clara O'Connell or that there was any consideration given for the deed or that the deed was ever delivered to Dennis O'Connell, or to anyone for him, or that the deed was valid. The deed recites a consideration of $10.

This court in *Toney v. Toney,* 84 Or. 310, 314, 165 P. 221, said:

"* * * where a deed is attacked on the ground of fraud or imposition the recital of a consideration therein is only *prima facie* evidence that the consideration has in fact been paid. A fraudulent grantee, in other words, cannot tie the hands of a court of equity by inserting in the deed such a recital contrary to the fact."

In *Allen v. Ayer,* 26 Or. 589, 593, 39 P. 1, this court said:

"* * * It is elementary law that the delivery of a deed by the consent or with the acquiescence of the grantor is essential to pass title. * * * Without such delivery, it is ineffectual, although it may have been executed in due form, spread upon the records, and be in the actual possession of the grantee. * * * And it is said that 'a deed delivered without the knowledge, consent, or acquiescence of the grantor is no more effectual to pass title to the grantee than if it were a total forgery, although the instrument may be spread upon the record.' Henry v. Carson, 96 Ind. 422." See also *Clark v. Clark,* 56 Or. 218, 107 P. 23.

It is not believable that, after the plaintiff and her husband Dennis O'Connell had constructed this apartment house and worked hard to reduce the indebtedness to about $18,000, the plaintiff would give away her in-

terest in the property to the defendant Allen O'Connell or convey the title so that Allen O'Connell would receive the same by his father's will.

■ After a careful reading and consideration of the testimony we conclude that the plaintiff did not knowingly execute the deed in question, that the deed was never delivered to Dennis O'Connell, and that there was no consideration given for the deed. The deed was practically kept in the dark until after the death of Dennis O'Connell.

We affirm the decree of the lower court.

Plaintiff is entitled to her costs and disbursements upon this appeal.

BAILEY and LUSK, JJ., not sitting.