JACKSON v. JACKSON et al.

No. 7087.   Decided April 13, 1948.   (192 P. 2d 397.)

See 38 C. J. S., Gifts, sec. 67. Necessity of delivery where subject of gift is already in possession of donee at time of declaration of gift. See note, 103 A. L. R. 1110. See, also, 24 Am. Jur. 799.

Leon Fonnesbeck, of Logan, for appellant.

J. Wesley Horsley, of Salt Lake City, and George D. Preston, of Logan, for respondents.

WADE, Justice.

This action was brought by plaintiff Leland Jackson against defendant Violet M. Jackson, his deceased brother's wife, personally and as administratrix of Thomas K. Jackson her deceased husband, for possession of a tractor, plow and alfalfa crowner. Charles F. McNeely who had purchased the tractor from her was made a defendant but he made no answer and is not involved in this appeal.

The complaint is separated into two causes of action. The first alleges that decedent sold the property in question to plaintiff on February 8, 1944, who received a bill of sale therefor but that possession thereof was in deceased at the time of his death on December 6, 1946, and that about January 20, 1947, defendant refused to surrender possession thereof to plaintiff. The second cause of action alleges that on February 8, 1944, decedent, Thomas K. Jackson, executed and delivered a bill of sale to plaintiff for the property in question to secure a loan of $2,368.39 which plaintiff loaned and advanced to decedent at that time. That such loan has never been repaid but this defendant sold and delivered the tractor to defendant McNeely on or about December 30, 1946. By her answer defendant denied that decedent ever executed or delivered the bill of sale to plaintiff or that he conveyed or delivered such property to him, and denied that decedent ever borrowed $2,368.39 or any sum of money which was not repaid prior to his death.

There is practically no dispute in the evidence as to what happened between these parties nor as to the surrounding facts and circumstances. There is a disagreement as to what was the intention, particularly of the deceased, at the time of these transactions and as to what was the legal effect thereof. The facts are as follows:

For more than 13 years prior to the trial of this case in 1947, decedent and Violet M. Jackson were husband and wife, they had no children, they owned and operated a large tract of dry farm land near Blue Creek in the Northern part of Box Elder County, together with trucks, tractors, a combine harvester and other tools and implements and they lived in a trailer cabin. Shortly after the war broke out in 1942, they went to San Francisco and worked for a while in the ship yards where Violet met and had a love affair with another man. In the spring they returned to their farm but Violet was dissatisfied and returned to San Francisco where she lived with her sister apparently to be near her boy friend. From then on, for the next several years, she spent a large part of her time there, but occasionally she returned and lived for a few weeks with her husband being with him each year during the harvest time. During this time, her husband maintained a checking account in the Bear River State Bank at Tremonton on which she was authorized to draw checks.

This affair of his wife with another man was a hard blow to Thomas. He had a heart ailment of long standing and did not expect to live long. He wrote her long endearing letters importuning her to return to him, and pleaded with her to at least write him oftener. Shortly before Christmas in 1943 he visited with her in California. Before going he arranged for plaintiff and his brother Merlin to deliver some wheat to the Farmer's Grain Cooperative, at Ogden, Utah, and for plaintiff to deposit the check which he would receive in payment therefor in plaintiff's name in the Bear River State Bank, and then for plaintiff to draw from that account sufficient money to pay decedent's current expenses and deposit the same in decedent's bank account. To pay these

accounts, decedent signed six blank checks and left them with plaintiff with the understanding that he should see that they were filled out with the correct amounts and deliver each check to the proper payee in payment of decedent's debts. It was understood that the balance of the money which plaintiff should receive in payment for decedent's grain and deposit in plaintiff's account, over and above the amount which he was directed to deposit to decedent's account to pay his current bills and sufficient to keep a small balance on deposit in decedent's account, should remain on deposit in plaintiff's name and that he would pay the same back to decedent from time to time at decedent's request. In accordance with these arrangements on January 6, 1944, plaintiff received checks as the purchase price of decedent's grain in the sum of $2,821.05, this he deposited in his own name in the Bear River State Bank, on January 7, 1944 and on that day he drew a check on that account in favor of decedent for $2,168.39 which he deposited to decedent's account. He then filled in the six checks which decedent had left with plaintiff in the proper amounts which decedent owed to his creditors and delivered them to decedent's creditors in accordance with their understanding, leaving only enough money in decedent's account so that if Mrs. Jackson wished to return home there would be enough money remaining in the bank so that she could draw a check for that purpose.

Soon after January 7th, decedent returned to his home without his wife. Early in February he had a real estate and insurance man, James Brough in Tremonton, draw up four bills of sale covering his personal property which he signed on February 8, 1944. One of these instruments was the one here in question, wherein decedent purported to sell and transfer to plaintiff his tractor, plow and crowner. Another was made to his brother Merlin purporting to transfer to him decedent's truck, another purported to transfer to C. V. Lilenquist, a farm implement dealer in Tremonton, his combine harvester, and the fourth purported to transfer to a man in Burley, Idaho, his automobile and

the trailer cabin. When he had these instruments drawn he told Mr. Brough that he did not owe any of the grantees therein anything, and that he did not intend to surrender possession or ownership of the property therein purported to be transferred, to the transferees therein named, but that he had the instruments made to create an appearance in case of divorce that he did not own such property. About that time decedent got permission of Lilenquist to make out the bill of sale to him and made the same statement to him of the reasons therefor and the purpose and intention thereof as he had made to Brough. But he did not ever deliver the bill of sale to Lilenquist. When it was time to renew his truck license deceased did deliver to his brother Merlin the bill of sale for the truck and the license was taken out in his brother's name, until after decedent's death when Merlin transferred it to Violet. Merlin testified that decedent told him that his purpose in making the bill of sale to him was the same as Brough testified, and that there was no intention to transfer ownership or the right of possession of that truck to him.

After these bills of sale were made and signed, decedent took them to his trailer home and shortly thereafter his wife returned from California and found them there. She gave them to her brother's wife so that her husband would not get them, but her sister-in-law told her husband, Violet's brother, of what had happened and he returned them to decedent. Thereupon decedent took the bill of sale, the letters from the boy friend to Violet, decedent's letters to Violet, decedent's January 1944 bank statement and some cancelled checks to plaintiff who lived in Ogden and left them with him, saying that they might be useful to plaintiff. Plaintiff retained possession of all of such papers until the time of the trial. He claimed that he had possession of the tractor for a period of about six weeks during the spring of 1946, and that he did some work crowning lucerne therewith for people in northern Davis County and received for his own use the pay therefor. However, Violet testified that when this work was done plaintiff and decedent divided the

money earned in accordance with a previous arrangement. The other bill of sale was never delivered to the man in Burley.

Plaintiff argues that all of the evidence of Brough, Lilenquist, Merlin Jackson, defendant and others, who testified of facts which tended to show that the parties to this bill of sale did not intend it to effect a transfer of the property or any interest therein, was inadmissible because it tends to vary the terms of a written instrument by parol evidence. In plaintiff's first cause of action he alleges that decedent sold the property to him and the bill of sale recites a bargain and sale of such property but plaintiff does not claim that he paid or agreed to pay anything of value for it. His evidence tends to show that if he obtained any interest in this property it was either as a gift or that his brother gave him the $2,821.05 grain money and then borrowed it back and gave this bill of sale as security for such loan. Thus by his own evidence plaintiff shows that this transaction was not what the bill of sale purports to evidence, i. e. a purchase and sale of this property. Since plaintiff claims ownership of this property as a gift, either of the implements or the money through this bill of sale, it is not sufficient for him to show merely that that instrument was left in his possession, he must go further and show that at that time his brother intended to make an outright gift to him of this property, or that he intended to make an outright gift of the money to him. The necessary intention must be shown by clear and convincing evidence before a gift can be established. See *Helper State Bank* v. *Crus*, 95 Utah 320, 81 P. 2d 359; *Reed* v. *Knudson*, 80 Utah 428, 15 P. 2d 347; *Mower* v. *Mower*, 64 Utah 260, 228 P. 911; *O'Connel* v. *O'Connel*, 162 Or. 411, 91 P. 2d 1107; 38 C. J. S., Gifts, § 15. Since, before such instrument can have the effect of transferring any interest in the property there must be a delivery with the necessary intention, what the donor's intention was may be shown by parol evidence without violating the rule against varying the terms of a written instrument by such evidence, because

the object is not to change the terms of the instrument but to show whether the instrument ever went into effect as a transfer of the property or an interest therein. See cases above cited and 38 C. J. S., Gifts, § 66.

Plaintiff also argues that the evidence to which he objected was not admissible because defendant did not plead the issue thereby raised. Plaintiff by his pleadings claims ownership of this property through this bill of sale which is denied by this defendant. The evidence to which plaintiff objects merely tends to show that plaintiff did not acquire the ownership to this property in this manner or at all. It does not involve any question of an affirmative defense, confession and avoidance or counter claim. It merely tends to defeat the very elements of a transfer claimed by plaintiff. Plaintiff's claim is therefore not well taken.

It does not necessarily follow that plaintiff can maintain this action for the possession of this property if it were established that decedent gave him the grain money then borrowed it back and gave the bill of sale to secure the payment of that loan. If such were the case it might well be that plaintiff would first have to demand payment of the loan, and in case of refusal, to foreclose his lien rather than to bring an action for the possession of the property. We need not express any opinion on that question since plaintiff, as hereinafter shown, must fail on other grounds.

Plaintiff complains that the court erred in refusing to receive in evidence some endearing letters written by her boy friend to Mrs. Jackson. Also in its refusal to admit letters written by decedent to his wife while she was in California, shortly before he visited her there in December of 1943. He contends that such letters tend to show that decedent intended to make a gift of the $2,821.05 grain checks to plaintiff or that he intended to make a gift of the tractor and other implements to him. If there were no other evidence of the estrangement between decedent and his wife on account of the other man then these letters would be admissible as they would tend to show a motive

on the part of the decedent for giving his property to his brother rather than to leave it to his wife. Since the estrangement was clearly shown by other evidence the refusal to receive these letters could not be prejudicial. As to the letters which decedent wrote his wife, had they dealt with the question of a property settlement or a disposal of his property, they might well have been valuable as indicating his intention in that regard, but these letters do not deal with that question at all. In them decedent shows that he is much depressed on account of financial reverses, bad health and because his wife has left him alone for another man. He importunes her to return to him, or at least to write him more and friendly letters and not to stop writing to him altogether. These letters do not directly discuss decedent's property or his intentions with respect thereto. At most they merely suggest a reason why he might want to give his property to someone else rather than leave it to her, but his attitude therein expressed does not indicate an intention to give his property to plaintiff or anyone else. In view of the fact that there was other ample evidence to show this estrangement and a reason why decedent might want to transfer his property to someone other than his wife, the refusal to receive this evidence was clearly not prejudicial to plaintiff.

This is a law action and we can review the evidence only to determine if it is sufficient to sustain, the judgment. In order for plaintiff to succeed he must establish that decedent intended to make a gift to him either of the $2,821.05 grain money, or of the tractor and other implements described in the bill of sale. There is no evidence that decedent sold this property to plaintiff or that plaintiff paid anything of value therefor.

That decedent did not intend to make a gift to plaintiff of this tractor and other implements is conclusively shown. All this property remained in decedent's possession and under his control the same after as before the bill of sale, he paid for its repairs and had the use thereof during all of that time.

At the time of making the bill of sale and thereafter decedent made statements to Brough, Lilenquist, Merlin Jackson, and this defendant, fully explaining that he had no intention of parting with the ownership of that property at that time. The only evidence which in any way tends to show an intention to transfer this property is the bare manual delivery of the bill of sale and the testimony of plaintiff that for about six months in the spring of 1946, he took the tractor and crowner and crowned alfalfa for some farmers in Davis County and collected and retained the pay therefor. But defendant testified that after this was over plaintiff settled with decedent for the use of the tractor in accordance with a previous agreement. After the bill of sale was placed in plaintiff's possession, decedent continued to file statements with the county assessor's office wherein he claimed to be the owner of this property, and plaintiff signed one of such statements which recognized decedent's ownership thereof. On the witness stand plaintiff detailed the conversation which occurred at the time decedent left the bill of sale and other papers with him, but there is not a word of that conversation which indicates that plaintiff intended to part with the ownership thereof. In fact plaintiff never made any claim that the ownership of that property was then transferred to him.

What plaintiff does claim by his testimony is that decedent gave him the $2,821.05 as an outright gift, and then borrowed back from him $2,368.39 and made the bill of sale to secure the payment of that loan. This claim is not supported in the record by any testimony except the bald conclusion of the plaintiff that such was the nature of their transactions. Although plaintiff detailed parts of the conversation which occurred at the time decedent left the bill of sale with him, and stated in substance the directions which decedent gave to him with regard to depositing the grain money to plaintiff's own account there is not a word which he claims that decedent said to him in either of those conversations which would indicate such was decedent's intention or that decedent told him anything to that effect.

From plaintiff's own testimony this money was deposited in plaintiff's own account at decedent's request, and at the same time decedent requested plaintiff to immediately draw from that account $2,168.39 on the day of the first deposit, and to deposit that amount to decedent's account in the same bank, which plaintiff did, and it was understood that the entire amount deposited would be returned to decedent upon his request. Plaintiff also testified that prior to the leaving with him of the bill of sale decedent had requested and received the return of two $100 checks, and that the balance of that money was returned to decedent in small amounts upon decendent's request, the last check being paid on May 19, 1944.

Plaintiff makes no claim that he ever demanded repayment of any of that money from decedent during his lifetime, nor of this defendant after his death. His testimony is that he presented her with the bill of sale and demanded that she surrender the property, not that she pay the money which he now claims it was given to secure. There is not a word in the record which tends to show that decedent intended to give this money to plaintiff and then borrow it back and secure the payment of such loan by this bill of sale and the court did not err in its findings.

It is contended that the court failed to make findings on all of the issues, but we have read its findings and are of the opinion that they sufficiently reflect the facts as herein detailed necessary to support the judgment and that the court did not err in that respect. The decision of the trial court is therefore affirmed, and respondent shall recover her costs on appeal.

McDONOUGH, C. J., and WOLFE, PRATT, and LATIMER. JJ., concur.