# MOORE v. VAN TASSELL

(No. 2212; May 26, 1942; 126 Pac. (2d) 9)

For the appellant, there was a brief and oral argument by *James A. Greenwood* of Cheyenne.

For the respondent there was a brief and oral argument by *Carleton A. Lathrop* and *John C. Pickett* of Cheyenne.

126

PER CURIAM.

The matter at bar presents a direct appeal proceeding to review a judgment of the district court of Laramie County, Wyoming, wherein an alleged gift of corporate stock was confirmed in the plaintiff, Granville Moore, and against the asserted right thereto of Maude B. Van Tassell, defendant, a general finding in said judgment being made in plaintiff's favor. One phase of this litigation has already been considered by this court in our case No. 2037, State ex rel. Moore v. Van Tassell Real Estate and Live Stock Company, 53 Wyo. 89, 79 P. (2d) 476.

The action last mentioned was one brought by Granville Moore to procure a writ of mandamus directed to the corporation aforesaid, requiring it to permit inspection of its books by Moore as an alleged stockholder therein. The district court of Laramie County denied the writ and we affirmed that ruling on the sole ground that relator's right was "at least debatable". Among the several rules deemed applicable to that matter and which were applied in disposing of it were that "generally title to property will not be tried in a mandamus proceeding"; also that "a writ of mandamus will be refused where the question on which the right thereto depends is debatable"; and, further, that the writ will not issue to enforce a right which is in substantial dispute or as to which a substantial doubt exists; in other words that the right to the writ must be clear.

The instant action was one wherein a judgment was sought by plaintiff Moore against the defendant aforesaid that he was the legal owner of certificate of stock numbered 8, for one hundred shares of stock of the corporation above mentioned, and that she was not, but was without any title thereto. Maude B. Van Tassell defended, denying plaintiff's claimed ownership of the

stock and stock certificate in question, asserting that plaintiff was guilty of laches in making claim to said check, and that plaintiff's right to said stock was decided adversely to him in the mandamus proceeding aforesaid, with the result that that issue is res adjudicata now.

The pleadings of the parties and the judgment rendered by the trial court in the mandamus action are very fully described in the opinion as filed in our case No. 2037 aforesaid, and it will consequently be unnecessary to restate them here.

Before advancing further in discussing the case at bar it may be here mentioned that the district court sustained a demurrer to the defendant's asserted defense of laches. In this we think the court was clearly right, especially when viewed in the light of the ultimate finding and judgment now under review and the result we find ourselves obliged to announce of our conclusions herein. This claim of laches appears to be based upon the pleaded fact that Granville Moore had for more than seven years neglected to claim any rights after he knew of the probate proceedings in the estate of R. S. Van Tassell, deceased, and which are also described in the opinion in our case No. 2037, supra, and more than four years subsequent to the time the defendant first asserted her right to ownership of the stock in controversy. If Moore was actually the owner of the stock in question, the fact that the stock was included in the probate proceedings connected with the probate of the will of R. S. Van Tassell and thereafter distributed to his surviving wife, Maude Van Tassell, could hardly deprive plaintiff of his title thereto. Church v. Quiner, 31 Wyo. 222, 224 P. 1073. The record before us discloses that neither the estate aforesaid or Maude B. Van Tassell ever had possession of the stock certificate representing the one hundred

shares of stock in the corporation aforesaid. Additionally, no assignment of error seems to have been made regarding this matter and no authorities in support of defendant's claim in this regard appear to be submitted.

So far as the claim of the defendant that the matter of the ownership of the stock in question was established as res adjudicata by the proceedings in the mandamus action mentioned above, we are convinced that such a claim is quite untenable and this for several reasons: First, the defendant in the action at bar was not a party to the mandamus proceeding. She was expressly excluded therefrom by a ruling of the district court when the mandamus action was tried. The parties in that proceeding were Granville Moore as relator with the Van Tassell Real Estate and Live Stock Company and Albert Cronland as the sole defendants. It is elementary that the parties in the prior proceeding must be the same as those in the later action in which the defense of res adjudicata is set up, and all must be bound by the earlier adjudication. Cook v. Elmore, 27 Wyo. 163, 171, 192 P. 824. Secondly, it was clearly pointed out in the opinion of this court in the mandamus action aforesaid that we applied the general rule which was urged by counsel for the defendants in that case, that the title to property would not be tried in mandamus proceedings at least to the extent of determining whether the trial court "abused its discretion in denying the writ"; and in the opinion filed in the mandamus case in this court it was also pointed out that, "If the trial court had granted the writ asked herein, it would in no way have been binding upon Mrs. Van Tassell, who was not a party to the action." Referring to the finding by the district court in the mandamus proceeding to the effect that relator had no right in the stock, this court additionally said:

"We need not decide whether that finding was correct or erroneous. We cannot say that the evidence in

the record is such that it could not create in the mind of the trial court at least a reasonable doubt as to the relator's right, and that is all that is necessary to prevent us from holding that the court abused its discretion in denying the writ. We think that relator's right is at least debatable."

Third, upon the disposition of the mandamus case here relator filed a petition for a rehearing on the sole ground that in any subsequent action between Moore and Maude B. Van Tassell as to the title to the one hundred shares of stock in controversy, the party last mentioned would very likely claim that the matter was res adjudicata because of the action of the trial court in deciding therein that relator was not the owner of the stock. We denied that petition without opinion because we thought sufficient had been said in the opinion already on file to indicate the contrary. Fourth, it is pointed out also in the opinion last mentioned that the evidence is "meager on the point as to whether or not the certificate of stock held by relator was issued in excess of the capital stock of the defendant corporation". Counsel for the defendants in the mandamus case had pressed upon us the point that: "A corporation can not issue capital stock in excess of the amount for which it was incorporated or in excess of an increased amount of capital stock and a certificate representing overissue of stock is void under all circumstances." It appears conclusively by the record before us now that there was no overissue of stock in the Van Tassell Real Estate and Live Stock Company, and the point thus urged now appears to have in fact been utterly without foundation.

Really the only question of consequence in the case at bar is whether R. S. Van Tassell made a gift inter vivos to the plaintiff under the facts which the trial court was authorized to, and did, conclude existed through its general finding aforesaid. Most of these

facts are established beyond dispute. The material circumstances which should be considered in connection with this point we will now undertake to briefly mention.

Prior to April 3, 1911, R. S. Van Tassell had married a woman who had two children by a former marriage. Their names were Granville Moore and Blanche Moore, they being consequently stepson and stepdaughter as regards Mr. Van Tassell. Subsequently Blanche Moore became the wife of a man by the name of Wigginton. Her husband evidently could not or did not do much in the way of furnishing her financial care. Her brother Granville testified on the trial of the instant action that he had contributed to Blanche's support "almost entirely for the last twenty years". The trial of this action was had on November 26 and 27, 1940. It seems that Mr. Van Tassell knew of the financial assistance thus given by Granville to his sister. The mother of these two children died some time prior to the year 1913, for during that year Mr. Van Tassell married the defendant in the case at bar, and she became his widow when his death occurred April 12, 1931. Blanche Moore Wigginton died August 12, 1935. Prior to the year 1911 Mr. Van Tassell was the owner of considerable property in the form of ranches and livestock.

About April 3, 1911, the Van Tassell Real Estate and Live Stock Company was incorporated under Wyoming law and the property aforesaid was transferred to it. This corporation was formed with a capital stock of $100,000, divided into one thousand shares of the par value of $100 each share. A. H. Marble received one share, Claude Draper one share and, though the record does not specifically so state, except inferentially, R. S. Van Tassell received one share. Mr. Van Tassell also received stock certificate No. 4 for 997 shares, the remaining stock of the corporation afore-

said. Mr. Claude Draper served as secretary of the corporation for many years. At the inception of the company Mr. Van Tassell became and continued as its president until the time of his death.

On the 16th day of January, 1926, the record discloses that Mr. Van Tassell directed Mr. Draper to cancel stock certificate No. 4 aforesaid and issue in lieu thereof two certificates, one to Granville Moore for one hundred shares and one to R. S. Van Tassell for 897 shares in the corporation above named. This was done and Van Tassell as president and Draper as secretary signed both certificates. Notation was made over the secretary's signature on cancelled certificate No. 4 that certificates numbered 8 and 9 were issued in lieu of "this #4". Van Tassell retained certificates No. 9 for 897 shares, but certificate No. 8, according to the undisputed testimony of Mr. Draper, was handed by Van Tassell to Draper, with instructions "to keep the certificate and when something happened to him (Van Tassell) to send it to Granville"; that no one was to know that that certificate had been placed with Mr. Draper; that Mr. Draper then placed said certificate No. 8 in his safety deposit box and kept it there, he retaining the key thereto; that no one had access to the box except Mr. Draper; that the certificate No. 8 was delivered for the purpose of reimbursing Granville for his care of his sister and also for his sister's benefit; that after the stock certificate No. 8 came into Draper's possession and had been disposed of as described above, Mr. Van Tassell on one occasion asked him (Draper) if he still had the certificate No. 8, and Mr. Draper told him he did have it and where he kept it; that Draper under date of July 8, 1928, wrote to Granville Moore, in response to an inquiry made by the latter, that "for over two years I have held for you as trustee a stock certificate"; that prior thereto Granville Moore had written Mr. Draper that his stepfather

(Van Tassell) had told him (Moore) that Draper "had something for him" (Moore).

It may be observed here that there was nothing illegal affecting the issuance of certificate No. 8 as shown by the record at bar. When Mr. Van Tassell died and his will was probated 998 shares of stock were listed as belonging to his estate. No attention was paid by the defendant in listing the corporate stock for probate purposes aforesaid to certificate No. 8 for one hundred shares in said company, and the defendant never had that certificate in her possession. August 1, 1932, Mr. Draper mailed certificate No. 8 aforesaid to Granville Moore, and he in due course received the same.

Under these facts the following authorities are material and pertinent as we think:

In re King's Estate, 49 Wyo. 453, 57 P. (2d) 675, where the facts were that the owner delivered to the secretary of a corporation a stock certificate assigned in blank, with written instructions directing him to cancel the old certificate and to issue new certificates to the son of the owner. These instructions were signed by the owner of the original certificate as president of the corporation. This was held to be a sufficient delivery of the stock certificates to the son. See also Stewart v. Collins, 36 Wyo. 210, 254 P. 137.

The case of In re Brady's Estate, 239 N. Y. Supp. 5, was one to establish a gift inter vivos of certificates of stock, and it was shown that the donor had certificates in a certain corporation, which certificates were owned by him, issued in the name of his wife and children, but nevertheless retained the certificates in his possession and deposited them in a safety deposit vault subject to his order, and made declarations that he had given the certificates to the donees. It was held that this demonstrated that the donor was agent for the

donees or was a self-constituted trustee for them, which was sufficient to establish a valid gift of the stock though the donor reserved the right to vote the stock.

In Lynch v. Lynch, 124 Cal. App. 454, 12 P. (2d) 741, it was held that, where a portion of the stock held by the defendant was actually transferred on the books of the corporation and a certificate therefor issued in plaintiff's name, the defendant merely retaining possession of the certificate, this constituted a prima facie case of transfer sufficient to create a legal delivery of the shares, and that the fact that the donor retained the certificate did not necessarily overthrow this prima facie case; also that the gift was not void because the donor reserved to himself the right to dividends declared during his lifetime.

In 24 American Jurisprudence 771-772, Section 80, the text states that:

"Generally, there is a complete gift of corporate stock where, by the direction of its owner, it has been transferred to the donee on the books of the corporation, and a new certificate issued in the name of the donee, or a certificate is issued in the first instance in the name of the donee, although the certificate so issued is retained by the donor or the corporation, and not delivered to the donee."

The Supreme Court of Oregon in Simonton v. Dwyer, ...... Or. ......, 115 P. (2d) 316, a recently decided case, the opinion being filed July 15, 1941, in discussing the matter of gifts of corporate stock, pointed out that:

"It must be remembered that the usual and ordinary way of making a gift of corporate stock is for the holder of a certificate to indorse the same and to deliver it to the donee. In that case, the delivery of the indorsed certificate is essential to the validity of the gift. Here, the transfer was made by delivering up his own certificates and having new certificates issued to the donees in lieu thereof. Therefore, the transfer of the

stock was rightfully made and completed and vested in the transferees the legal title to the stock. For that reason, a manual delivery of the newly issued stock was not necessary to complete the gift. As said by Shaw, C. J., in Fisher v. Essex Bank, 5 Gray, Mass., 373: 'When a transfer is rightfully made and completed, it vests a right in the transferee, not merely to act in the place of the vendor and in his name, but substitutes him, in all respects, as the legal and only holder of the shares transferred, to the same extent to which they were before held by the vendor. The title therefore, by which such interest is held, is strictly a legal title.' "

See also Allred v. Allred, ...... Ariz. ......, 111 P. (2d) 68.

Copeland v. Craig, 193 S. C. 484, 8 S. E. (2d) 858, was a case where the deceased who owned stock in a North Carolina corporation indorsed a stock certificate without assigning any reason therefor, and requested the secretary and treasurer of the corporation to cancel the old certificate and issue two new certificates in lieu thereof, one in favor of the deceased's daughter and the other in favor of himself, and thereafter dividends were paid to the daughter, but on the donor's death the daughter's certificate was found in his safe along with other papers. A finding by the trial court that deceased had made a completed gift of stock to the daughter was held to be not contrary to the evidence nor erroneous in point of law.

In Imparato v. Luscardi, 123 N. J. E. 298, 197 A. 379, it appeared that the holder of certain shares of stock in a building and loan association desired to transfer them to the joint names of himself and another, presented certificates in accordance with the secretary's statement, when his wishes were made known to the latter, together with a letter requesting transfer to himself and another party, and the secretary made the transfer as indicated and desired by the

holder of the shares in the association on the association's books and wrote in other party's name upon original certificates. Delivery of the altered certificates to the other party completed the gift so that the shares became joint property of the two, with the right of sole ownership in the survivor, although he did not execute a formal and complete power of attorney for such transfer as provided in the Uniform Stock Transfer Act which prevailed in New Jersey.

In Payne v. Tobacco Trading Corporation, 179 Va. 156, 18 S. E. (2d) 281, a quite recent case decided January 19, 1942, it appeared that on the night of August 23rd the donor told a friend that he was going to give the donee some corporate stock and that the donor wanted the friend "to settle the matter", and when the donee was called into the room where the donor was, the latter told her that he was giving her the stock. The donor then directed the friend to send the necessary shares to the corporation and signed a letter requesting the corporation to transfer the stock. It was held that the donor intended to make a gift in praesenti even though he desired to retain the right to collect a dividend thereon payable on August 29th, and that this was so regardless of whether the letters authorizing the transfer were delivered to the friend or to the donee.

The case of Phillips v. Plastridge, 107 Vt. 267, 179 A. 157, 99 A. L. R. 1074, was one where it was decided that a completed gift of corporate stock was made by causing it to be issued in the name of another, thereby divesting the donor of all right and title, notwithstanding the certificates were not detached from the stock book and delivered to the donee, but remained in the custody of the corporation and the donee may have been ignorant of the transaction at the time it occurred.

The court said in part:

"The chancellor found that there was a completed gift of the stock from Phillips to his daughter.

"So there was. Phillips had divested himself of all right and title to the stock, and the complete ownership had passed to his daughter. It was his voluntary act, affording an inference of the existence of a donative intent. Under the circumstances, a manual delivery of the certificates was not necessary. In Roberts's Appeal, 85 Pa. 84, 86, it is said: 'The gift is complete by the delivery of the thing itself, for transferring the shares to her upon the books of the company is putting her in complete possession of the thing assigned, and clothing her with the complete legal title. It stands in the place of a delivery. Such an act performs precisely the office which an actual delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. * * * The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books. There was here no locus poenitentiae. He (the donor) could not have used the certificates, nor could any one have used them except Miss Foster (the donee).' "

In the pertinent note appended to the case last mentioned in 99 A. L. R. 1077, at 1080, we find the following statement of the rule:

"There is a complete gift of corporate stock where, by the direction of its owner, it has been transferred to the donee on the books of the corporation, and a new certificate issued in the name of the donee, or a certificate is issued in the first instance in the name of the donee, although the certificate so issued is retained by the donor or the corporation, and not delivered to the donee."

Cases from a number of the leading appellate courts of the Union are cited as supporting the views thus expressed.

Applying the principles announced by the decisions above briefly reviewed to the facts of this case, as we have outlined those facts from the record, we find ourselves in agreement with the ruling made by the district court in disposing of the litigation before us.

It is plain that Mr. Van Tassell did all he could to place the legal title to the shares of stock evidenced by Certificate No. 8, aforesaid, in Granville Moore when the result Mr. Van Tassell desired to accomplish is considered. After he had had the stock certificate made out in Granville Moore's name he allowed it to remain in Mr. Draper's safety deposit box from January, 1926, to the date of his (Van Tassell's) death on April 12, 1931. He made no move whatsoever to retract the gift. On the contrary, after he had had Certificate No. 8, supra, made out, signed by both Draper and himself as officers of the company and left in Draper's possession, he took the trouble to inquire if the stock certificate was still held by Mr. Draper, and then did nothing when he learned that it was. He also in effect confirmed the gift when he apparently told Granville Moore on several occasions thereafter that Mr. Draper "had something for him" (Moore). As already indicated there was not the slightest evidence either disclosed by the record that Certificate No. 8, aforesaid, represented an overissue of stock and was consequently void. We have no hesitation, therefore, in directing an affirmance of the judgment of the district court of Laramie County.

*Affirmed.*