**In the Matter of the ESTATE of David E. ROSS, Deceased,**

v.

**E. Roderick ROSS, Respondent.**

**No. 16816.**

Supreme Court of Utah.

Feb. 26, 1981.

* WILKINS, J., acted on this case prior to his resignation.

Max D. Wheeler, Michael D. Blackburn, Craig Stephens Cook, Salt Lake City, for appellants.

Kenneth W. Yeates, Salt Lake City, for respondent.

HOWE, Justice:

This action was initiated by the personal representative of decedent David E. Ross to determine whether the decedent had made completed inter vivos gifts of certain shares of corporate stock to his son E. Roderick Ross (hereinafter called Rod) or whether the shares were a part of the decedent's estate and should be distributed equally among his three children, who are his heirs under his will. The District Court held that the decedent had made valid inter vivos gifts of the stock to Rod. David E. Ross II and Betsy Louise Ross Rapps (hereinafter called David and Betsy), the brother and sister of Rod, appeal.

Decedent was the secretary and treasurer of Equitable Life and Casualty Insurance Company and also served as one of its directors and as stock transfer agent. The entire stock was owned by the decedent and his two brothers and their families. Decedent also served in the same capacities in four other family-owned companies, namely, Ross Brothers Corporation, National Housing and Finance Syndicate, Insurance Investment Company, and Equitable Investment Company.

In 1972 Rod began working for Equitable Life. David and Betsy lived out of the state and were not involved in the operations of the various companies. Between 1974 and 1978, decedent told several persons of his desire to reward Rod for his work with Equitable Life by giving him stock which would be in addition to the stock he would later inherit. A number of stock transfers were subsequently made on the corporate books by the decedent. In November 1974 decedent cancelled a stock certificate representing his ownership of 2440.-87 shares of Equitable Life. In its place a certificate for 2210.70 shares was issued in Rod's name and another for 230.17 shares was issued to decedent. These transfers were shown by appropriate entries on the stock ledger sheet of the company. The certificate issued to Rod was placed in an envelope on which was typed his name, the certificate number, the number of shares it represented, and the date. The envelope was placed in a bank safety deposit box with other envelopes that contained stock certificates belonging to other stockholders.

In December 1974 a 25% share dividend was declared and paid to all shareholders of record of Equitable Life. A certificate for 552.67 shares of common stock was issued in Rod's name and was placed in the envelope containing the other certificate already issued to him. A notation on the envelope identified the second certificate. Cash dividends were paid to shareholders in November 1976 and May 1977 and Rod received the amounts of $276.33 and $276.34. He also attended and voted at shareholders' meetings.

In May 1977 Ray Ross, decedent's brother and business associate, died. At that time the decedent and his surviving brother, Galen, transferred the contents of the safety deposit box where the stock certificates of various family members had been kept to a safe located in the company offices. Only the decedent and the president and vice-president of Equitable Life had the combination to the safe.

The Ross Brothers Corporation was organized at a meeting held in December 1977 for the purpose of distributing the assets of a former partnership involving the three brothers. Galen Ross issued stock certificates in the new corporation. A certificate for 250 shares, which represented 25% of the shares allotted to his father, was issued in Rod's name and handed to him personally. He delivered the certificate to his father, and it was placed in an envelope identified by his name and kept with the other family stock certificates.

In February 1978 there were several transactions in which stock certificates were issued in Rod's name. These certificates represented shares in Equitable Investment Company, Insurance Investment Company, and the National Housing and Finance Syndicate Corporation. The trial court found that "[a]ll actions necessary to complete the transfer on the books and records of each of the corporations for each of the shares of stock in question were completed...." The certificates were placed in a single envelope with the name of Rod Ross and the certificate numbers written upon it. The envelope was placed with the others in the office safe.

The shares transferred to Rod represented one-fourth of the stock holdings of his father. There was testimony that the decedent had expressed his intention that Rod should receive one-fourth of his stock through lifetime gifts, and that the remaining three-quarters would pass by will and be equally divided among Rod, David and Betsy. This would result in Rod's receiving a total of one-half of his father's stock, and his brother and sister each receiving one-fourth.

A will prepared for the decedent by his brother Galen and dated February 1978 divided the estate equally among the three surviving children. There was no reference in the will to prior gifts of stock to Rod.

After their father's death, on April 19, 1978, David and Betsy challenged the validity of the inter vivos stock transfers. Their position before the trial court was that there had been no completed gifts because Rod did not have possession of the stock certificates issued in his name, he did not know where the certificates were or have access to the safe where they were kept, and no gift tax returns were ever filed by the decedent with respect to the transfers.

Following an evidentiary hearing and the submission of trial memoranda by the parties, the court below found

> that there was a clear and unmistakable intention on the part of the deceased to pass immediate ownership to E. Roderick Ross and that there was an irrevocable delivery to him and an acceptance by him of the stock certificates here in question.

The trial judge in his memorandum decision emphasized the significance of the transfer of the shares in question to Rod on the corporate books.

Under Utah law a donee has the burden of proving an inter vivos gift by "clear and convincing" evidence. *Sims v. George,* 24 Utah 2d 102, 466 P.2d 831 (1970); *Lovett v. Continental Bank & Trust Co.,* 4 Utah 2d 76, 286 P.2d 1065 (1955). This standard requires a finding not merely that the existence of the disputed facts is more probable than not, but rather that it is very highly probable that such facts exist. *Lovett,* supra. The role of this Court in reviewing a decision that a gift was made is to determine whether it was reasonable for the jury to find that the requisite degree of proof was met. *Id.*

Appellants assert that three elements must be proven for a person to claim valid title to property by inter vivos gift: a clear and unmistakable intention on the part of the donor to pass immediate ownership, an irrevocable delivery, and acceptance. They

concede that there is substantial evidence in the record to support the lower court's conclusion that there was the necessary intent on the part of decedent to make a gift and that Rod "accepted" the stock transfer. They contend, however, that the court's decision was erroneous in that the element of irrevocable delivery was not established by clear and convincing evidence.

An important purpose of the delivery requirement is to avoid the hedging of a would-be donor who wishes to retain certain benefits of ownership, including the control of the gift property, while designating another as the recipient of the property during the donor's lifetime. If a gift is not completed before one's death, of course, it is subject to the formalities of testamentary disposition. In the instant case, therefore, the finding of a gift must be based on the decedent's voluntary parting with the control of the stock during his lifetime.

■ It is appellants' position that decedent should have parted with his dominion over the certificates by physically delivering them to Rod and that the transfer of ownership on the corporate records was insufficient to meet the requirement of delivery. Other courts have split on this issue, and the question has not been ruled on by this Court. Appellants contend, nevertheless, that Utah law supports their contention. *Rasmussen v. Sevier Valley Canal Co.*, 40 Utah 371, 121 P. 741 (1912), cited by appellants, is not in point, however, for in that case no stock certificates had ever been issued, and this Court held that an oral order by the decedent to the corporation to transfer his stock to a donee was sufficient to effect a valid transfer. *Brown v. Wright*, 48 Utah 633, 161 P. 448 (1916), and *Gowans v. Rockport Irrigation Co.*, 77 Utah 198, 293 P. 4 (1930), also cited by appellants, do not involve inter vivos gifts of stock; rather, they hold that in a commercial setting the actual physical delivery of stock certificates to a purchaser is sufficient as between the parties to transfer title, regardless of corporate by-laws imposing additional requirements.

A leading case holding that transfer on the corporate books was sufficient to complete a gift of shares in the corporation is *Roberts' Appeal*, 85 Pa. 84 (1877). The circumstances there were similar to those in the instant case. The donor caused certain stock certificates to be made out in the name of his niece with the stated intention of making a gift to her; she, however, was not informed of his intention, and the stock certificates were not delivered to her. The donor apparently retained them in his own custody and possession, but the gift to the niece was nevertheless held to be complete. The Pennsylvania court distinguished the *Roberts'* facts from the situation where an assignment of shares was executed and retained by the potential donor and the shares remained in his name. In such a case no property would have passed to the donee.

The court stated that on the facts of *Roberts*

> . . . the gift is complete by the delivery of the thing itself, for transferring the shares to her upon the books of the company is putting her in complete possession of the thing assigned, and clothing her with the complete legal title. It stands in the place of a delivery. Such an act performs precisely the office which an actual delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. Retaining in his possession the certificates which are in her name, and which he could not use without her consent, cannot undo or qualify the decisive ownership with which he had invested her by the actual transfer to her on the books of the company. The best evidence of her ownership is the transfer on the books of the company. The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books. [85 Pa. at 86–87.]

The rule expressed in *Roberts* has also been followed in other jurisdictions. In *Phillips v. Plastridge*, 107 Vt. 267, 179 A. 157 (1935), a widow sought to compel an alleged donee to account for proceeds from stocks the widow claimed to be part of her husband's estate. Certificates had been issued in the name of decedent's daughter by a former marriage, but they remained in the possession of the corporation until after the donor's death.

The court ruled that the donor

> had divested himself of all right and title to the stock, and the complete ownership had passed to his daughter. It was his voluntary act, affording an inference of the existence of a donative intent. Under the circumstances, a manual delivery of the certificates was not necessary. [179 A. at 18.]

The Supreme Court of Oregon in *Simonton v. Dwyer*, 167 Or. 50, 115 P.2d 316 (1941), rejected the contention that manual delivery of stock certificates by the father/donor to his daughters was necessary to constitute a valid gift. The court pointed out that the usual method of making a gift of corporate stock is by endorsement and transfer of the certificate. But the court held that where a transfer is made by surrendering one's certificates and having new certificates issued in the names of the donees, there is a completed transfer of the stock that vests legal title to the stock in the transferees without the necessity of manual delivery.

Similarly, the Supreme Court of Wyoming in *Moore v. Van Tassell*, 58 Wyo. 121, 126 P.2d 9 (1942) adopted the rule that:

> "There is a complete gift of corporate stock where, by the direction of its owner, it has been transferred to the donee on the books of the corporation, and a new certificate issued in the name of the donee, or a certificate is issued in the first instance in the name of the donee, although the certificate so issued is retained by the donor or the corporation, and not delivered to the donee." [126 P.2d at 14.]

See also *Owens v. Sun Oil Co.*, 482 F.2d 564 (10th Cir. 1973); *Wilmington Trust Co. v. General Motors Corp.*, 29 Del.Ch. 572, 51 A.2d 584 (1947); *Copeland v. Craig*, 193 S.C. 484, 8 S.E.2d 858 (1940), Annot., 23 A.L.R.2d 1171, 1186 (1952); Annot., 99 A.L.R. 1077, 1080 (1935).

Appellants have cited several cases as authority for the proposition that title passes only with the transfer of the stock certificate to the donee. In *Figuers v. Sherrell*, 181 Tenn. 87, 178 S.W.2d 62 (1944), for instance, the court held that on the facts of that case

> as between the parties thereto the completion of a sale or a gift cannot be made to depend upon entries on the books of a corporation where its shares of stock are involved. Title in this jurisdiction goes with the certificate. [*Id.* 178 S.W.2d at 632.]

This conclusion, however, must be viewed in light of the precise issue before that court as phrased in the following language:

> The question presented for decision is whether there is a completed gift to another when a stockholder turns in his certificate of stock and has the corportion issue and record a new certificate in the name of another, but the holder of the old certificate has the new certificate delivered into his own hands and retains possession thereof until his death, *nothing else being said or done by him tending to show a gift*. [Emphasis added. *Id.* 178 S.W.2d at 631.]

The court distinguished *Figuers* from cases in which "there were distinct and repeated statements and acts of the donor confirming the gift and it was held that his subsequent possession was as agent or trustee for the donee." The donor in *Figuers* "never said or did anything with the slightest tendency to show a present gift to his nephew"; rather, he himself collected and used the stock dividends and even pledged the certificate to secure his own business obligations. The uncontradicted evidence of donative intent in the instant case clearly renders *Figuers* not in point here.

Appellants also cite *In re Bush's Trust*, 249 Minn. 36, 81 N.W.2d 615 (1957), in which the court held that the bare transfer of stock on the books of the corporation and the issuance of new certificates in the name of the transferor's niece had not passed title to the niece. The court, however, further held on the facts before it that a letter from the transferor to his niece evinced an intent to create a trust relationship as to such stock. The facts of the present case are distinguishable and do not require adherence to the rule applied by the Minnesota court. Nor do we find other cases referred to by appellants to be controlling here.

In further support of their position, appellants have quoted from Bogert, Trusts & Trustees § 142 (1979), concerning corporate stock transfers as follows:

A mere direction by the owner of stock to the corporation to change the corporate records regarding ownership, followed by such change to the name of another, would seem to be inadequate proof of a gift when not followed by delivery of the new certificate. A change of registration on the corporation stock records is not ordinarily necessary to complete a gift, nor is it conclusive evidence that a gift has been made. [Citations omitted.]

The sentence preceding the above quoted material is relevant here, however.

One also may make another trustee or *absolute donee* by paying for stock and having the certificate issued in the name of the trustee or donee, but additional facts may rebut the evidence of an intent to make a gift in this way. [Emphasis added.]

The language of both of these statements clearly is consistent with the cases that have found completed gifts of corporate stock upon issuance of certificates in the donee's name when other evidence also supports a finding of donative intent.

Appellants' final contention is that the transfer provisions of the Uniform Stock Transfer Act [1] and the subsequently-enacted Utah Uniform Commercial Code, §§ 70A–8–101 *et seq.*, have required a donor to make actual manual delivery of certificates of stock to his donee to effectuate a valid inter vivos gift. Although the statutory requirements of stock transfer have been considered in cases cited by appellants, the lack of donative intent was a factor important to the outcome. Courts have in the main concluded that the commercial statutes are not controlling on the issue of what acts are sufficient for delivery of a gift. See, e. g., *Frey v. Wubbena*, 26 Ill.2d 62, 185 N.E.2d 850 (1962), which disapproved the application of the Uniform Stock Transfer Act in Shinsaku *Nagano v. McGrath*, 187 F.2d 753 (7th Cir. 1951), a case cited by appellants. The court in Frey stated: "We do not regard the act as being intended to govern a gift situation such as that presented ... here."

The Supreme Court of Iowa in *Kintzinger v. Millin*, 254 Iowa 173, 117 N.W.2d 68 (1962), took a similar position with regard to a contest over the validity of a testator's inter vivos gift of corporate stock to his son. The court held that manual delivery was not essential, stating:

[A]lthough some decisions are to the contrary, by what we think is the weight of authority which we are persuaded to follow, the rights of the parties as between themselves are not affected by the provisions of the Uniform Act. They were enacted for the protection of the corporation, so it might safely deal in payment of dividends or otherwise with the person in whose name the stock was registered. [Citations omitted. 117 N.W.2d at 76.]

The reasoning of *Kintzinger*, supra, was followed by the Supreme Court of Washington in *Henderson v. Tagg*, 68 Wash.2d 188, 412 P.2d 112 (1966). It rejected the

---

1. The Uniform Stock Transfer Act was adopted in Utah in 1927 and was subsequently codified in § 16–3–1, U.C.A. (1953). It was repealed in 1965 with the enactment of the Utah Uniform Commercial Code.

rigid application of the Uniform Stock Transfer Act to stock gifts and found appropriate "the more flexible rules of personal property law in ascertaining whether or not a gift was consummated." [214 P.2d at 115.] See also *McClements v. McClements*, 411 Pa. 257, 191 A.2d 814 (1963), in which the transfer of ownership on the corporate books along with evidence of donative intent satisfied the delivery requirement.

We are unpersuaded that the statutory requirements governing commercial stock transactions are conclusive in establishing the rights of parties involved in gift transactions, and we therefore hold that manual delivery of the stock certificates personally to Rod was not a prerequisite to a valid gift.

Viewing the facts of this case in light of the requirements of inter vivos gifts, we find the gifts of stock to Rod were complete and valid. Evidence of decedent's intention that Rod be made the owner of the stock in question during his lifetime was uncontroverted. Appellants do not challenge the sufficiency of the evidence as to donative intent nor the finding of the trial court that the change in ownership was recorded on the corporate books. New certificates were issued in Rod's name. The decedent did not thereafter exercise control over the stocks. On the contrary, Rod voted the stock as its legal owner and received cash and stock dividends.

The fact that the stock certificates were kept in a safe to which decedent, but not Rod, had access is not fatal to the finding of a completed gift. The decedent had physical possession of stock certificates belonging to a number of other Ross family members. There was no assertion or evidence that he exerted control or possessory rights over any of that stock. His custody of Rod's stock was simply consistent with the practice within the family businesses of keeping the stock certificates in a central location clearly identified as to the owners of the shares. Individual envelopes carried owners' names, stock certificate numbers, and the number of shares represented by the certificates.

We find no error in the trial court's interpretation of the evidence or its application of Utah law in reaching the conclusion that the inter vivos gifts to Rod were valid. This conclusion was based on evidence that not only meets the clear and convincing standard but is virtually undisputed.

Affirmed. Costs to Respondent.

MAUGHAN, C. J., and HALL, STEWART and OAKS, JJ., concur.