## BURTON v. McLAUGHLIN.

No. 7392.   Decided April 25, 1950.   (217 P. 2d 566.)

484

See 34 C. J. S., Executors and Administrators, sec. 786. Services implied contract as to, see note, 54 A. L. R. 548. See, also, 58 Am. Jur. 512.

*Rawlings, Wallace & Black,* Salt Lake City, for appellant.

*Merrill C. Faux,* Salt Lake City, for respondent.

WADE, Justice.

Was the evidence sufficient to establish the claim of plaintiff, Dora Burton, respondent here, for services she

claims to have rendered to Patrick Henry McLaughlin from October 1, 1945 to his death on May 17, 1948, is the question presented by this appeal. Also, defendant J. H. McLaughlin, appellant here, who is a son of and the administrator of the estate of decedent, claims that Raymond R. Brady, an attorney was erroneously allowed to testify as a witness to matters which he learned in a confidential capacity in drawing a will for deceased.

At the time of his death decedent was about eighty years old and since 1942 he had received monthly payments as a retired railroad crossing watchman. During the time in question he lived alone in his home on the north side of Second South Street at the corner of Garland Court between Sixth and Seventh West Streets in Salt Lake City. Plaintiff lived in another house on the rear of decedent's lot where she kept house for a man named Nonas, who rented from decedent. Plaintiff did odd jobs of house work and mending besides keeping house for Nonas, and she claims to have rendered decedent daily services in tending his house, cooking meals, washing his dishes, and when he was sick, caring for him personally during the two and one-half year period above mentioned.

The trial court found in her favor and awarded her a judgment for $930.00 which is approximately a dollar a day for that time.

This is a law case so we only review the evidence to determine whether it is reasonably sufficient to sustain the judgment. If so, we must affirm the trial court's decision unless we conclude that defendant was prejudiced by erroneous admission of evidence. We will first dispose of the last question.

Mr. Brady, an attorney, testified that he visited decedent not less than 25 times during March, April and May immediately preceding decedent's death. Originally he went there to prepare a will for decedent as his attorney, that this business was closed when the will was signed on May

8, 1948, and the relationship of attorney and client thereupon ceased, but decedent was a sick man and Mr. Brady continued to visit him as a friend to look after his needs thereafter and he finally arranged for decedent to be taken to a sanatarium where he died a few days later. He testified that after this legal business was closed and at a time when there was no legal business pending between them, he and his wife drove out to decedent's home where decedent was sick and Mrs. Burton was attending him, and in the presence of Mrs. Burton and witness' wife, decedent said:

"If it wasn't for Dora Burton, I probably wouldn't be here now * * * this woman has taken care of me for many years and I want to see she is taken care of."

That thereupon witness suggested that he draw a codicil to the will, but decedent refused to disturb the will, insisting that he would take care of it in his own way, saying:

"I don't want to change the will; that's been done and signed * * * I'll take care of it in my own way * * * I haven't paid you yet, but I'll take care of you * * * You will be paid and she will be paid * * *."

Witness further testified that during his calls he did not remember visiting decedent at any time when plaintiff was not there doing something for him, that he had seen her wash, feed and dress decedent, cook his meals, go on errands for him, and straighten up the house, bring in wood and coal for the stove. These visits occurred during most every hour of the day and in the evenings.

Part of the services which Brady testified he saw plaintiff rendering to decedent during his visits were observed while he was there in the capacity of decedent's attorney. Defendant did not object to this testimony and makes little or no point of this fact. Such observations which are in no way connected with the legal business being transacted, are not a communication made by

a client to his attorney "in the course of professional employment" under Section 104-49-3, U. C. A. 1943.

But defendant urges that the conversations above quoted were communications made by decedent to Brady, his attorney, in the course of his professional employment to prepare and supervise the execution of the will, and are inadmissible under subdivision (2) of the above section of the code. According to all of the evidence, the only legal business which Brady transacted for decedent, was to draw and supervise the execution of his will. This matter was completed before these conversations occurred and at that time he was there simply as a friend. A communication under those circumstances does not come under the bar of the above statute. The mere fact that after the first statement was made, Mr. Brady suggested that decedent should take care of it by a codicil to the will, which suggestion was immediately rejected by decedent, did not have the effect of re-establishing the relationship of attorney and client, and therefore on that occasion that relationship did not exist. The court did not err in receiving this testimony.

This brings us to defendant's main contention that the evidence is not sufficient to support the findings of fact and judgment. He contends that there is no evidence that any substantial services were rendered, or what, if any, was the reasonable value thereof, or that it was the intention of the parties that such services were rendered for compensation and not gratuitously, or even that such services were not fully paid for during the lifetime of the decedent. Defendant emphasizes the fact that there is no direct evidence that McLaughlin requested the services or that she demanded payment therefor during his lifetime, although the first services she claims to have rendered were as much as two and one-half years before his death. He contends that under such circumstances, courts look with suspicion on claims made against estates and require that they be established by clear and convincing evidence.

Besides the evidence of Mr. Brady already reviewed, the following testimony was adduced.

Mrs. Leland L. Jenkins, who lived on Garland Court immediately North of the rear of decedent's lot, and the small house thereon where plaintiff lived, testified: That during the year and a half before decedent's death, as she was passing by two or three times she saw plaintiff carrying a tray of food from her home to his, that three or four times on cold mornings she saw plaintiff taking kindling wood into his home, and many times she observed plaintiff sweeping his doorway out. She further testified that she had observed plaintiff running errands for decedent and occasionally he had arranged for her son to drive the car and take plaintiff and decedent on some errand of his. And that on one occasion when McLaughlin was sick, her husband brought him home for supper and when asked how he managed to get along, he said plaintiff had been bringing him something to eat.

Mr. Benjamin M. Bullough testified: That for eight years he had operated a business immediately west of decedent's home on Second South Street, and that he was acquainted with plaintiff and decedent during the time in question, and that many times he had seen plaintiff around decedent's home and from inquiries she seemed to be informed as to his condition. That on May 13, 1948, decedent had executed to him a deed to his property pursuant to an agreement of sale between them, but refused to sign the deed until the witness had assured him that he would allow plaintiff to live in the house in the rear for a period of at least six months and would then give her ample time after notice to move in which to find another home, stating that she had agreed to and had taken care of him when he had no one else to look to.

Both this deed and the will were by mutual consent of all the parties rescinded and treated as void.

Hyrum Silver testified that he had known plaintiff since 1934 or 1935, and that while she lived in the little house of McLaughlin's she had mended his clothes and he had seen her during that time, two or three times a week. That he had seen her in the McLaughlin home many times taking care of him and his housework and knew of her going on errands to buy him supplies many times, and that sometimes when she could not leave the house, she had sent him on such errands, that he had heard McLaughlin express appreciation for how good she had been to him.

Jess Nonas, a Mexican who had some difficulty with his English, while testifying stated: That he had rented the little house in the rear from McLaughlin, paying him $12 per month, and had lived there for three years, during which time plaintiff had lived there keeping his house and doing his cooking and mending. That during that time she had also kept house, cooked and mended for McLaughlin and looked after his personal needs when he was sick. That within three or four months before McLaughlin died, McLaughlin said to her:

"You help me for three years; me had no pay or anything for you. I will tell you, I will give you this house for three years for myself."

Defendant's evidence has a contrary tendency. It minimized the services rendered. There was testimony that during the latter part of 1947 and early part of 1948 another couple lived with decedent and the wife did his housework, that at the time of his death, the place was filthy dirty, and that plaintiff had refused even for pay to wash some curtains for him, which his son had hired another woman to do. Most of this testimony was given by defendant, decedent's son, who admittedly only visited his father about twice a month, and a daughter who visited decedent during the entire five years he lived at his Garland Court home, only on the day her father was taken to the sanatarium. This evidence was haphazard and very unsatisfactory in detail, it did not squarely contradict plaintiff's

evidence. Its weight and probability were for the trial court to determine and evaluate and from the findings the court believed plaintiff's evidence.

Plaintiff's evidence was sufficient to sustain the findings and judgment. Brady visited McLaughlin at least twenty-five times during the last two and half months of his life, these visits occurred at all times of the day and evening, but on every occasion plaintiff was there taking care of his personal needs and household affairs. Her friends and neighbors, although they naturally kept no accurate account of the days and hours she spent, observed her around his house taking care of it, running errands for him and seeing that he was supplied with the necessary food and medicines. Thus she was observed taking food and kindling wood into his house, cooking his meals, sweeping his place out at the entrance, and running errands for him and arranging for others to do the same. And, Nonas, who was in a position to know, said she did his housekeeping during the time in question. This evidence definitely indicated that over a period of years she took charge of his housekeeping and personal needs and saw to it that the necessary supplies were on hand. In addition to this evidence, he expressly admitted that she had cared for him during that period and that he was going to pay her for it; he stated to Mrs. Jenkins that plaintiff had been bringing him his food, he told Bullough that she had agreed to and had taken care of him when he had no one else to look to, he told Nonas that she had helped him for three years and Brady that she had taken care of him for years. From this evidence the natural inference is that she had taken care of his housekeeping and personal needs and the responsibility of seeing that he was supplied with food and medicine during that time. This was a substantial and valuable service.

Defendant argues that there is no evidence that these services were rendered for compensation and not gratuitously, merely as a friend or good neighbor. If these ser-

vices were as extensive as we have indicated the evidence shows, then they were not the kind of services that strangers usually give without expecting compensation. Decedent by his statements definitely indicated that he did not so consider them. He refused to sign the deed to Bullough until he had received the promise that she would be allowed to remain in the place rent free for at least six months, he told Nonas that he was going to give plaintiff the use of the house for three years, and Brady that he would see that she was paid in his own way just as he would see that Brady was paid for his legal services. Although in the first two statements above referred to, he underestimated the value of her services by each of such statements he indicated that he considered he owed her for the services and in the last statement he placed her services on the same plane as a debt for the legal services of his attorney. By these statements he clearly recognized that he was obligated to pay for the services and that such were his intentions. His statement to Brady to the effect that she would be paid in his own way just a few days before he died, clearly indicated that she had not been paid for her services, as do his statements to Nonas and Bullough, wherein he indicated that he was going to allow her to live in the house rent free.

Defendant's argument that there is no evidence of the reasonable value of the services is also untenable. She testified what she received for similar work per hour. But since decedent is dead and her testimony is barred by the "dead man's statute" it is impossible to itemize in the evidence the number of hours spent. But the general nature of the work she performed was shown and there was sufficient from which the court could make a rough estimate of the time and value of her services. This is sufficient in that respect.

A contract of employment of this kind may be implied from the surrounding facts and circumstances and it is not necessary to prove an express request for the services

or an express agreement to pay therefor. Where the evidence shows that valuable services have been rendered, the court may infer an agreement to pay therefor. See *Mathias* v. *Tingey*, 39 Utah 561, 118 P. 781, 38 L. R. A., N. S., 749; 34 C. J. S., Executors and Administrators, § 452(2), page 285; Williston on Contracts Rev. Ed. Section 36, pp. 94 to 96 which says:

"* * * And even though no request is made for the performance of work or service, if it is known that it is being rendered with the expectation of pay, the person benefited is liable. It is a question of fact if services are accepted whether a reasonable man in the position of the parties would understand that they are offered in return for a fair compensation, or would rather suppose either that they are offered gratuitously, or if not, that the recipient might think so. It is customary to lay down presumptions, as that 'with respect to strangers a contract for compensation will be implied unless a contrary situation is exhibited,' whereas as between relatives, 'a contract alleged to exist must be affirmatively shown.' But it is undesirable to lay too much stress on such presumptions. They are mere inferences of fact. Intimate friends sometimes render services gratuitously, and how close must relationship be to make one presumption or another applicable? The question is purely one of fact, varying in every case, but with the burden always on the party, who alleges a contract and seeks to enforce it, to prove its existence. Family relationship is of course important, as is the fact that one who requested services did not receive the benefit from them. This may justify an inference that he expected any compensation to be sought from the person who received the benefit. But circumstances vary in every case, and there should not be any attempt to build up a variety of legal presumptions to meet them."

Appellant contends that a claim against an estate for services allegedly rendered decedent over a period of years without showing an express agreement, or a demand for or any payment thereon, should be carefully scrutinized and allowed only on clear and convincing evidence. In certain cases involving parent and child, many courts have held that such is the rule. As pointed out by Williston in the above quotation, courts often talk about certain sets of facts which create a presumption one way or the other. A child might well render services in caring for a parent

during his last days gratuitously where it would be expected that a stranger would be paid therefor. In *Patton* v. *Evans,* 92 Utah 524, 69 P. 2d 969, 971, 112 A. L. R. 589, we held that where a child had left the home of her parents and established a home of her own, then returned to take care of them

"she need not prove a case of implied promise by overwhelming evidence."

See *Mathias* v. *Tingey,* supra, and *Shields* v. *Eckman,* 67 Utah 474, 248 P. 122.

None of those cases required clear and convincing evidence even though they are parent and child cases. *Van Netta* v. *Heywood,* 57 Utah 376, 195 P. 192 and *Brinton* v. *Van Cott,* 8 Utah 480, 33 P. 218, did require clear and convincing evidence to establish by implication an agreement to transfer real estate by will with sufficient part performance to take it out of the statute of frauds and require specific performance. But those cases are distinguishable from this case because an oral contract to convey real estate in order to require specific performance and avoid the statute of frauds always requires clear and convincing proof.

Here the parties are strangers to each other, it is shown that valuable services were rendered over a period of years, this, decedent has admitted a number of times and asserted that he had not paid therefor but would do so in his own way. Under the facts and circumstances of this case, a contract of employment and a promise to pay for such services may be inferred from a preponderance of the evidence and clear and convincing evidence is not required. As previously pointed out, the evidence was substantial on the necessary elements of a contract and therefor sufficient to sustain the findings of the trial court.

Judgment affirmed, plaintiff awarded her costs on appeal.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WOLFE, J., concurs in the results.