286 P.2d 1065

**Nellie A. LOVETT, Plaintiff and Respondent,**

**v.**

**The CONTINENTAL BANK AND TRUST COMPANY, a corporation, Executor of the Estate of Mrs. J. U. Giesy, also known as Juliet Galena Giesy, Deceased, Defendant and Appellant.**

**No. 8199.**

Supreme Court of Utah.

Aug. 10, 1955.

Skeen, Thurman, Worsley, & Snow, H. G. Christenson, Salt Lake City, for appellant.

McBroom & Hanni, Salt Lake City, for respondent.

WADE, Justice.

This case involves certain claims by Mrs. Nellie A. Lovett, who was friend and personal attendant to Mrs. J. U. Giesy, against the latter's estate. The claims are opposed by the executor bank in the interest of two cousins who, as residuary legatees, take the bulk of the estate of about $60,000.

Plaintiff's first count claimed that certain jewelry had been given her by Mrs. Giesy prior to her death; her second count sought compensation for personal services she had rendered for Mrs. Giesy. The defendant bank sought to defeat both counts; the first on the ground that plaintiff had failed to show a completed gift of the jewelry; and the second on the ground that the services rendered by Mrs. Lovett were "a gratuity in expectation of a legacy." The bank also counterclaimed for a diamond ring which Mrs. Lovett had received from Mrs. Giesy and which she claimed the latter had given her.

The jury returned verdicts favorable to the plaintiff on all counts, awarding her the jewelry, allowing her $3,300 for personal services, and dismissing defendant's counterclaim for the diamond ring. Defendant's motion for a new trial or for judgment notwithstanding the verdict was denied and defendant appealed.

I. We first direct attention to the attack on the jury's finding that there was a completed gift of the jewelry.

It is elementary that an irrevocable delivery with the intention to pass immediate ownership is a necessary requisite of a completed gift. Defendant urges here that the jury was not correctly instructed on the necessity of delivery Instruction 6, to which defendant excepts, is not as clear as it might be on that requirement, but the jury was adequately apprised of the applicable law in another instruction, Number 5, which read:

> "Delivery, as used in these instructions, means that there must be an actual transfer by the donor of the possession, dominion and control of the property to the donee. A manual transfer of the property by the owner, or by a person authorized or directed to do so by the owner to the donee, is a sufficient delivery. * * *"

If the instructions are considered together as they must be, the jury would not fail to understand the nature and necessity of delivery.

Defendant next urges that the evidence does not support a finding of completed gift. We agree that the plaintiff's burden of proof is greater than in the ordinary civil action. It has been said in this jurisdiction:

> "* * * One who asserts title by gift inter vivos has the burden of proving that a gift was made including all of the elements essential to its validity. (Citing authorities.) The rule is that 'A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos.' * * *"[1]

Many adjectives have been used to describe the degree of proof required to establish the elements of a gift,[2] probably the most common of such expressions is that the evidence must be "clear and convincing."[3] Courts recognize three different categories of fact each of which must be established by different degrees of proof; they are that the facts must be established (1) by a "preponderance of the evidence," (2) by "clear and convincing evidence" and (3) "beyond a reasonable doubt." It might aid to understand these concepts if they were described, as is sometimes done, in terms of the comparative degrees of certainty that the existence of the facts under each category must be established in the minds of the triers of the facts to the effect that the evidence must convince the trier of the facts, (1) that the existence of the disputed facts are more probable than their nonexistence, (2) that the existence of the disputed facts are very highly probable, and (3) that there

1. Jones v. Cook, 1950, 118 Utah 562, 223 P.2d 423, 425.

2. See 38 C.J.S., Gifts, § 67, page 870.

3. E.G., Jones v. Cook, see note 1 supra; Christensen v. Ogden State Bank, 1930, 75 Utah 478, 286 P. 638; Holman v. Deseret Savings Bank, 1912, 41 Utah 340, 124 P. 765; Jackson v. Jackson, 1948, 113 Utah 249, 192 P.2d 397.

is no reasonable doubt of the existence of such facts.[4] We have said that " 'clear, unequivocal and convincing evidence', is a higher degree of proof than a mere 'preponderance of the evidence,' and approaches that degree of proof required in a criminal case, viz., 'beyond a reasonable doubt,' "[5] and that a mind "which entertained, not a slight, but a reasonable doubt as to the correctness of its conclusion, would seem to be in a state of confusion."[6] These statements were made to emphasize the high degree of proof required under this category and in the Jimenez case we required a very high degree of proof,[7] but although the statement quoted from the Greener case seems to indicate that if the evidence left a reasonable doubt it could not be clear and convincing, other statements in the explanation of the evidence in that case seems to indicate a strong doubt of the existence of the disputed facts. It seems to be generally recognized that "clear and convincing evidence" requires a lesser degree of proof than "proof beyond a reasonable doubt," although it may approach such requirement. It may be that this Court requires a higher degree of proof under this category than is sometimes thought for that reason in describing this category above we used the term "very highly probable."

The concept of comparative degrees of certainty realistically recognizes that findings of fact by a court rest on probabilities and not on absolute certainties. There seems to be some doubt as to all genuinely disputed issues of fact. This does not mean that merely speculative evidence is sufficient, in all cases a finding of fact in favor of the party having the burden of persuasion must be supported by evidence which is consistent with the existence of and which tends to prove such facts and must convince the trier of the facts of the existence of such facts to the extent of the degree of proof required. It must also satisfy the court that the evidence is reasonably sufficient to prove such facts or sustain such findings. However, unless it is also the trier of the facts, the court need not be convinced that the facts found exist. Its problem is to determine whether the evidence is reasonably sufficient to sustain the findings. In so doing it should consider all of the testimony and the inferences therefrom in the light most favorable to the existence of the facts as found.

It requires a higher degree of proof to sustain a finding of a fact which must be established by "clear and convincing" evidence or "beyond a reasonable doubt" than where mere proof by a preponderance of the evidence is sufficient. To conclude other-

4. See McCormick on Evidence, Sections 319, 320 and 321, and authorities therein cited.

5. See Jimenez v. O'Brien, 117 Utah 82, 88 213, P.2d 337, 340.

6. See Greener v. Greener, 116 Utah 571, 591, 212 P.2d 194, 205.

7. See my dissenting opinion in Jimenez v. O'Brien, 117 Utah 82, 96–114, 213 P.2d 337.

wise would be unreasonable, for where a higher degree of evidence is required to establish a fact a proportionately greater degree of proof is required to sustain a finding of the existence of such fact. We agree with the statement of Mr. Justice Traynor of the Supreme Court of California[8] on this question:

> "* * * While it rests primarily with the trial court to determine whether the evidence is clear and convincing, its finding is not necessarily conclusive, for in cases governed by the rule requiring such evidence 'the sufficiency of the evidence to support the finding should be considered by the appellate court in the light of that rule.' Sheehan v. Sullivan, 126 Cal. 189, 193, 58 P. 543, 544; see, also Moultrie v. Wright, 154 Cal. 520, 98 P. 257. In such cases it is the duty of the appellate court in reviewing the evidence to determine, not whether the trier of facts could reasonably conclude that it is more probable that the fact to be proved exists than that it does not, as in the ordinary civil case where only a preponderance of the evidence is required, but whether the trier of facts could reasonably conclude that it is highly probable that the fact exists. When it holds that the trial court's finding must be governed by the same test with relation to substantial evidence as ordinarily applies in other civil cases, the rule that the evidence must be clear and convincing becomes meaningless."

The difficult problem is in applying these rules to the facts in the particular case for there is often great difference of opinion on whether the evidence reasonably sustains the findings. Sometimes three justices constituting a majority of the court hold that the conclusions of the two dissenting justices, the trial judge and all members of the jury are wholly unreasonable. This demonstrates that the test of the sufficiency of the evidence to sustain a finding is whether the evidence is reasonably sufficient and not, as sometimes stated, whether reasonable minds could so conclude.

We turn then to an evaluation of the evidence in the light most favorable to plaintiff to see if the jury could reasonably conclude that a completed gift, or a transfer of the jewelry to Mrs. Lovett in payment for her services was shown by clear and convincing evidence. Only the question of whether there was a completed gift was submitted to the jury, but if the evidence sustains a finding of such gift it was ample to show a transfer of the jewelry in satisfaction of an agreement that she would be well paid. In considering this evidence we must keep in mind that plaintiff was under the disability of the "dead man's statute" and had to rely on the testimony of others to prove her case.[9]

8. Beeler v. American Trust Co., 24 Cal.2d 1, 147 P.2d 583, 584, 600. See dissenting opinion.

9. Sec. 78-24-2, U.C.A.1953.

From May, 1950, until Mrs. Giesy's death in March, 1953, plaintiff Mrs. Lovett, spent several hours each day with her doing housework, personal beauty work, and acting as a companion for Mrs. Giesy, who was a semi-invalid in her 70's. Mrs. Giesy owned certain jewelry, stated to be worth about $5,000, which she kept in a jewel box, and which the plaintiff claims was given to her.

There is evidence that Mrs. Giesy made prior declarations of intent to give or transfer the jewelry to Mrs. Lovett. Both Mr. Lovett and a Miss Garrison, a nurse, testified to having heard Mrs. Giesy voice such intention some months prior to the claimed gift or transfer.

There is also direct evidence that Mrs. Giesy carried out her declared intention. Mrs. Maddocks, a private nurse for Mrs. Giesy, and an apparently disinterested witness, testified as follows: On March 13, 1953, Mrs. Giesy became seriously ill and on the 15th her physician, Dr. Smith, directed that she go to the hospital. When Dr. Smith inquired what should be done with the jewels Mrs. Giesey said, "I want Nell [Mrs. Lovett] to have them; they are hers." Mrs. Giesy then handed the jewel box to the nurse and said, "These are for Nell; give them to Nell." When Mrs. Maddocks attempted to follow the ambulance to the hospital one of the tires of her automobile blew out and she called the Lovetts to come and take her to the hospital. When the Lovetts arrived at Mrs. Giesy's apartment Mrs. Maddocks handed the jewels to Mrs. Lovett, relaying to her Mrs. Giesy's designation that she was to have them. Dr. Smith's version of this incident was to the effect that Mrs. Lovett was to hold the jewelry for safe keeping and that Mrs. Giesy instructed Mrs. Maddocks "to call Mrs. Lovett and have her come so she could turn the jewelry over to her."

Further, supplementing the foregoing evidence of the declaration to make the gift or transfer and the delivery of the jewelry to Mrs. Lovett, there is evidence that Mrs. Giesy later confirmed it. Mrs. Maddocks asserted that when Mrs. Lovett arrived at the hospital she heard her ask Mrs. Giesy whether she should turn the jewelry over to the bank, to which Mrs. Giesy replied, "No, those jewels are yours, Nell." Mr. Lovett corroborates this, relating that in the evening when he accompanied his wife to the hospital to visit Mrs. Giesy the subject of the jewels was again mentioned and that Mrs. Giesy stated to his wife, "I want you to have them."

Two days later, on March 17, Mrs. Giesy died. Her will, made more than two years before, had the effect of leaving this jewelry with the bulk of her estate to two cousins as residual legatees.

There is some testimony which would tend to dispute and to discredit plaintiff's evidence, had the jury so regarded it. In addition to the statement of Dr. Smith above referred to, Mr. D. A. Skeen, attorney for Mrs. Giesy, stated that a few days after the

latter's death Mrs. Lovett had told him "she had a box containing Mrs. Giesy's jewelry and asked what she should do with it [and] that she had taken it because she didn't want to leave it in the home after Mrs. Giesy went to the hospital." And Mr. O'Meara, trust officer of the bank, and Dr. Smith each testified that when Mrs. Lovett was advised to turn the jewelry over to the bank she expressed a willingness to do so and did not then assert ownership to either of them. Defendant advisedly places great emphasis on this evidence, but it seems to have been viewed by the jury in a different light than by the defendant bank.

It is almost banal to repeat that where the evidence is in conflict its weight, including the credibility of these witnesses, was for the jury. It would not be unreasonable for the jury to have thought Mrs. Lovett's willingness to turn the property over to the executor was not necessarily inconsistent with her claim of gift or transfer. A layman may be uncertain of legal rights and willing to cooperate in peaceful adjudication rather than to stubbornly insist upon a claim. The fact is that her counsel made an agreement with the bank that Mrs. Lovett would turn the jewelry over to it, but that such surrender would not prejudice her claim of ownership, and then commenced this action in order that the court might adjudicate the claim.

We are not prepared to say that it was unreasonable for the jury to find that the plaintiff met the degree of proof required, to establish the essential elements of a gift.

II. The next question presents a different problem. The jury by their verdict not only found an implied contract of employment between Mrs. Giesy and Mrs. Lovett and awarded Mrs. Lovett the reasonable value of her services in the sum of $3,300, but also found that Mrs. Giesy had given to her property worth greatly in excess of that amount.

The evidence showed that in May of 1950, Mrs. Giesy's attendant quit, whereupon she called Mrs. Lovett, asking her to come and "help her with her housework, beauty work and such." She further said, "I don't want you to be concerned about the pay, because you'll be well paid for your services." In accordance with this request, during the nearly three years until Mrs. Giesy's death, Mrs. Lovett spent a number of hours each day and often in the evening performing all sorts of personal services, including preparation of meals, keeping the house clean and in order, tending Mrs. Giesy's beauty work, handling correspondence and acting as a friend and companion. Other witnesses affirmed hearing Mrs. Giesy say of Mrs. Lovett that "she would be well paid one day," and "she would be well taken care of." The only evidence that the work was being done not for pay was a reported statement by Mrs. Lovett that she was caring for Mrs. Giesy "as a friend * * * because she loved her."

Thus the evidence is ample to support a finding of an implied contract to pay Mrs. Lovett the reasonable value of her services if she had failed to fulfill her express promise that she would be well paid. The evidence strongly suggests an understanding that payment for such services would be made and accepted by a transfer of property or by legacy and not by regular cash payments. The fact that although Mrs. Giesy was amply able to pay in cash, she asked Mrs. Lovett not to be concerned about the pay, assuring her that she would be well paid but offering her no regular payments for her services, clearly indicates that such was the understanding. Accordingly the evidence indicates and the jury found that Mrs. Giesy during her lifetime gave or transferred to Mrs. Lovett about $5,000 worth of jewelry. This is substantially in excess of the reasonable value of the services and fits in with the agreement that one day she would be well paid. This is clearly what the evidence indicates the parties contemplated and shows that the obligation was by these so called gifts completely discharged. There is a complete lack of evidence which tends to indicate that the parties intended a payment in cash of the reasonable value of the services in addition to making these transfers to her of property in excess of such value. These transfers of jewelry worth about $5,000 and the diamond ring worth about $2,000 had prevented an implied contract for the reasonable value of such services from coming into effect. In view of these facts the finding by the jury that there was an implied contract to pay the reasonable value of the services in addition to making these gifts or transfers is unreasonable and not supported by the evidence. The award of $3,300 is reversed and set aside.

The case of Burton v. McLaughlin[10] is different from this one in that there the deceased made no gift or transfer in payment for the services and the court properly awarded the employee the reasonable value of her services where as here the evidence shows that Mrs. Lovett was paid in accordance with the understanding of the parties.

III. Finally we turn to the counterclaim upon which defendant sued plaintiff for a diamond ring. With respect to it the defendant claims that the court erred in giving this instruction to the jury:

> "The burden is upon the plaintiff to prove by a preponderance of the evidence * * * the allegations of the * * * complaint * * *; and the burden is upon the defendant to so prove the allegations of its counterclaim. * * *".

The argument defendant makes is that instead of requiring Mrs. Lovett to establish the gift by clear and convincing evidence, the actual effect of the instruction was to

10. 1950, 117 Utah 483, 492, 217 P.2d 566.

clothe Mrs. Lovett with a presumption of ownership, and compel the defendant to prove its right to the ring by a preponderance of the evidence, which involves placing the defendant in the impossible burden of proving a universal negative, that no gift of the ring was ever made. It is appreciated that, with Mrs. Giesy unavailable to testify, the defendant was in a very difficult predicament as to proving the latter fact.

The evidence shows that in November, 1950, Mrs. Giesy bought a large diamond ring which, according to the salesman, she said she planned to give to Mrs. Lovett. In November, 1952, Mrs. Giesy handed the ring to Mrs. Lovett, explaining, "Nell, my large ring is getting to large for me * * * so now I want you to have it." Thereafter Mrs. Lovett kept the ring as her own for the several months until Mrs. Giesy's death, during which time Mrs. Giesy knew of Mrs. Lovett's possession and asserted no claim to the ring. These facts being established by undisputed collateral evidence we believe it can be regarded as sufficient to prove the gift of the ring by clear and convincing evidence as the jury had been instructed and to establish Mrs. Lovett as the owner. Under such circumstances, the defendant as counterclaimant was in the position of challenging her ownership, and did have the final burden of proof to establish by a preponderance of the evidence that the ring belonged to the estate. In any event, no prejudice inured to defendant because the evidence supporting the gift of this ring was credible and undisputed, and would have supported a directed verdict in favor of plaintiff and against the defendant on the counterclaim.

The judgment for plaintiff on the first count and in dismissing the counterclaim is affirmed, and is reversed on the second count. Each party to bear his own costs.

McDONOUGH, C. J., concurs.

CROCKETT, Justice (concurring and dissenting).

I concur in the holding that the jury could reasonably regard as clear and convincing the evidence that Mrs. Giesy made a gift of the jewelry to Mrs. Lovett and that such is the proper degree of proof requisite to establish such gift. I disagree, however, with the decision that the jury verdict of $3,300 for the reasonable value of services rendered Mrs. Giesy must be overturned.

Plaintiff willingly turned the jewelry over to the executor to await a determination of her rights therein. She pleaded in her first count (and in answer to the counterclaim) that she was entitled to the jewels as a gift, and in a second count that she was entitled to reasonable compensation under a contract for services performed for Mrs. Giesy. It certainly must be conceded that it was possible for Mrs. Giesy to have made a gift of the jewelry, in the true legal sense of a gift —that is, a voluntary transfer without consideration—and also, wholly independent of such gift, to have requested and accepted the plaintiff's services with a promise to pay for

them under circumstances which would support a contract to pay for their reasonable value. The jury found for the plaintiff on each of these propositions separately. It is for this court merely to determine whether there was substantial, competent evidence upon which the jury could have so found, as we have stated innumerable times.[1] This is not a case in equity where we may properly be concerned with the weight of the evidence.[2]

I think the evidence, as set forth in the main opinion, must clearly be regarded as substantial, and sufficient to meet the required quantum of "clear and convincing" proof that there was a completed gift of the jewelry. In addition thereto, and independent thereof, I believe it is equally plain that there is substantial, competent evidence from which the jury could find that there was an express contract of employment between Mrs. Giesy and plaintiff and that the services rendered were to be paid for.[3] It is my opinion; therefore, that the jury could properly find the gift of the jewelry, and also, as a separate and independent proposition, find the contract of employment and the obligation to pay the reasonable value of the services performed.

I willingly admit that there is also the possibility that Mrs. Giesy in fact intended the transfer of the jewels to Mrs. Lovett to constitute payment for the services, as Mr. Justice Wade asserts. Such conclusion may be reasonable and may do equity. Parenthetically I observe that Mrs. Lovett was present, taking care of Mrs. Giesy, while the relatives who would otherwise inherit were afar, and not doing so. Therefore, morality and equity do not favor the latter, and in any event should have no bearing on the legal rights of the parties.

The difficulty with the solution reached in the majority opinion is that it is not in accordance with the theory upon which the case was tried in the lower court. At trial, and here on appeal, the defense was a square denial of both the gift and the contract, claiming that plaintiff had not produced substantial evidence of either. Apparently defendant felt so confident of these contentions that it did not request the court to instruct the jury that, even if it should find a valid gift of the jewelry to Mrs. Lovett and a valid contract of employment, they should also consider whether the jewelry might be regarded as a payment for the services rendered under the contract. In the absence of any such instruction, the jury was not only justified, but was obliged to treat the two counts as separate questions. No dereliction is imputable to the trial judge on that account, because such theory was never suggested to him; the defendant made no such request, nor did it take any

1. John C. Cutler Ass'n v. De Jay Stores, 1955, 3 Utah 2d 107, 279 P.2d 700.

2. Stevens v. Gray, Utah, 1953, 259 P.2d 889.

3. Under very similar facts on the question of contract, this court affirmed a jury verdict for plaintiff in Burton v. McLaughlin, 1950, 117 Utah 483, 492, 217 P.2d 566.

exception to the instructions as given in that regard, nor has defendant urged such theory in its brief on this appeal. The defendant having elected, both here and below, to stand on a frontal attack against the two propositions separately, and the jury having found for the plaintiff on both propositions on substantial, competent evidence, it seems to me to be an invasion of the jury's province for this court at this juncture of the case to import another theory for its solution and thus nullify the verdict of the jury as to the contract for the payment of services.

It is the duty of an appellate court to leave jury verdicts inviolate unless there is a sound and persuasive legal ground on which it is necessary to upset them, however tempting may be any alternative expedient for settling the controversy in a way more to our personal liking. I further observe that by now importing a new theory, which plaintiff had no opportunity to meet, this court is acting inconsistent with a salutary principle to which we are committed,[4] and which at the very least would require a new trial to give the plaintiff a chance to meet the theory upon which the main opinion proceeds.

I would affirm the judgment in its entirety.

HENRIOD, Justice (concurring and dissenting).

*I concur only with the main opinion's* conclusion as to the ring, the subject of the counterclaim.

The opinion correctly states that the plaintiff was required to prove a gift by clear and convincing evidence, concluding that the evidence satisfied such superior quality of proof, such conclusion apparently being predicated on the fact that the jury found in favor of plaintiff as to such gift.[1] From the facts set out in the main opinion it does not appear to me that the evidence of gift was clear and convincing, and I do not believe that simply because a jury finds in favor of such gift, that the evidence necessarily must be held to have been clear and convincing. Verdicts more than once have been upset where clear and convincing evidence was required, on the ground that reasonable men could not so find.

The main opinion sustains the jury's finding that there was a gift of the jewelry. It then goes on to say that the *transfer* of this jewelry satisfied a promise on the part of the decedent to pay the plaintiff for her services. If, as the main opinion finds, there was a *gift* of the jewelry, it could not possibly satisfy a *promise to pay,* since there is nothing in the law that says a contract or an obligation under a contract is destroyed in toto or pro tanto depending on the

4. Taylor v. E. M. Royle Corp., 1953, 1 Utah 2d 175, 264 P.2d 279; Morris v. Russell, Utah, 1951, 236 P.2d 451.

1. "We are not prepared to say that it was unreasonable for the jury to find that the plaintiff met the degree of proof required, to establish the essential elements of a gift." (Quote from main opinion.)

making of a gift and/or its value. The law has never permitted a gift to be used as a set-off against a contractual obligation, and it is therefore an inconsistency for the main opinion to hold that there was a gift of the jewelry but that the express contract was satisfied by the transfer (gift) of the jewelry.

It appears that the transaction involving an exchange of the jewelry is used by the main opinion 1) to establish a *gift* and also 2) to establish *payment under a contract*,—results which are quite discordant with the legal conceptions relating to gifts and contracts.

I am not in agreement with the main opinion, either, when it implies that had the express contract not been satisfied, recovery in this case could have been had under a theory of implied contract. The pleading in this case reasonably cannot support such a recovery. It is averred that "plaintiff rendered services to said deceased *at said deceased's special instance and request*, of the reasonable value of $3,300. That said deceased *agreed to pay to plaintiff the sum of $3,300 for said services*." It is difficult to see how counsel for a defendant could construe the wording of the complaint here as requiring him to prepare for and meet proof of an *implied contract*, where the whole pleading points rather clearly to a claim based on an *express promise*, incidentally and almost parenthetically mentioning that the amount *expressly* promised was a reasonable amount. Our rules do not allow for a recovery on an implied contract where an express contract is alleged, without a request for amendment of the pleadings, and an opportunity for an opponent to meet the new theory, just as the rules do not permit a recovery for an assault and battery where an express contract is alleged. To allow recovery on an implied contract or on a claim based on an assault and battery, where an express contract is pleaded, simply is to allow a pleader to caption a complaint and aver a right of recovery on a claim which he hopes to prove whether it develops that it is based on an express contract, an implied contract, a tort, an invasion of one's privacy, equitable relief, or otherwise. I cannot believe the rules contemplate such a result. To recognize an implied contract here, where an unproved express contract was pleaded, and no request for amendment had been made, and no amendment allowed to conform to the proof, without giving defendant an opportunity to meet a different theory, would seem to ignore a recent case decided by this court,[2] where it was held error to give judgment on an implied contract where an express contract was pleaded and no request for amendment had been made and no amendment allowed to conform to the proof. We said that the rules do not require one to meet a theory not pleaded either initially or by requested amendment, without affording an opponent time and an opportunity to meet the new theory.

2. Taylor v. E. M. Royle Corp., 1 Utah 2d 175, 264 P.2d 279.

WORTHEN, Justice (concurring in result):

I concur in the results reached by Mr. Justice Wade. I am inclined to the view expressed by Mr. Justice Henriod that having pleaded an express contract the respondent should prevail on that cause or not at all. Plaintiff failed to establish the express contract pleaded—that decedent agreed to pay her for her services $3,300. The liberalized rules of pleading should not be interpreted so loosely that there is no boundary between a cause of action predicated on an express agreement and one predicated on an implied agreement. It seems incompatible to hold that in failing to prove a pleaded express contract the plaintiff may take the benefit of an implied contract not pleaded and which is supported only by the evidence claimed to support the express contract as a windfall.

However, I believe it unnecessary to rest my conclusion that plaintiff is not entitled to recover on an implied contract for services rendered on the question of pleading.

I agree that the jury's finding that there was an implied contract to pay the reasonable value of services rendered is not supported by the evidence. I am unable to agree with the holding of the majority opinion that the evidence is ample to support a finding of an implied contract to pay Mrs. Lovett the reasonable value of her services if she had failed to fulfill her express promise that she would be well paid.

I do not treat the gift of jewelry as a payment for services under an implied contract. It is because I believe respondent rendered services in expectation of reward by gift or legacy that I rule out the idea of an implied contract. I think that the gifts made fortify the position that respondent and Mrs. Giesy never had a contract express or implied. Likewise, if there was contract for payment for services the gifts of jewelry, absent an agreement to satisfy the contract by the gifts, would not discharge the contract.

The record discloses that decedent did state to respondent that she would be well paid for her services and that she would be well taken care of. This fell far short of a promise to pay $3,300 as alleged by respondent.

It appears to me that the respondent believed she would fare better by such gift or bequest as decedent might make than by receiving only what was reasonable compensation. Respondent did not elect to have an understanding with the decedent as to payment for the services rendered. I do not believe that decedent undertook or intended to undertake to pay in cash. I do not believe that respondent expected to be paid in cash—nor do I believe that respondent wished to have the matter reduced to the specific terms of a contract.

In quoting from Williston on Contracts this Court said:[1]

1. Burton v. McLaughlin, 117 Utah 483, 217 P.2d 566.

"It is a question of fact if services are accepted whether a reasonable man in the position of the parties would understand that *they are offered in return for a fair compensation,* or would rather suppose either that they are offered gratuitously, or if not, that the recipient might think so. * * * The question is purely one of fact, varying in every case, but with the burden always on the party who, alleges a contract and seeks to enforce it, to prove its existence." (Emphasis ours.)

Respondent knew that decedent had funds to pay for any services rendered. I am of the opinion that respondent preferred to rely on the gratuity of decedent—well along in years, with no parents, children or close relatives, than to be paid only the reasonable value of the services. The conduct of both respondent and Mrs. Giesy over the full period must lead to the conclusion that Mrs. Giesy was evidencing appreciation for the services of respondent, and respondent rather considered herself not as an employee but as a friend.

It appears that the case falls within the class of cases where the services were performed in expectation of reward by gift or legacy. There is little question that respondent anticipated and received substantial gifts from Mrs. Giesy. About six months after respondent first visited her apartment, Mrs. Giesy, in company with respondent, purchased a diamond ring for $2,070 and on the same day showed the ring to respondent's husband in respondent's presence and said: "This ring is to be your wife's. I bought it for her." Approximately two years later Mrs. Giesy gave the ring to respondent and near the same time made her a gift of about $5,000 worth of jewelry. If respondent was relying on an implied contract she properly would have protested and advised Mrs. Giesy that since she was to be paid for her services the gift should not be made.

It further appears from the evidence that respondent was upset and shocked when she learned the contents of the will and found that she had received no legacy of any particular value. Respondent never demanded any money and was never paid any during the time she associated with Mrs. Giesy—not as a servant but as a companion. All employees of Mrs. Giesy were paid regularly. The entire conduct of both parties would seem to indicate that the respondent had anticipated that she would be the recipient of gifts or legacies and that she anticipated no other compensation.

I am of the opinion that where a claimed employee asserts that there was an agreement to pay for services—either express or implied—and no payment is ever requested or discussed, and as soon as the decedent's mouth is shut, a demand inconsistent with the conduct of the claimed employee should be badged as fraudulent. When, as here, gifts are accepted without a suggestion that they be applied on account or without the suggestion that they constitute overpayment,

it should be very persuasive that the parties never understood that they were on a contract relationship.

If respondent performed her services in expectation of reward by gift or legacy, she should not be permitted to claim also by contract after her arms were filled with gifts and the mouth of the other party is shut.

Nor do I think that there was any basis in law for submitting the question to the jury for them to speculate on or to make another gratuitous award to respondent.