2007 UT App 33

**STATE of Utah, in the interest of Z.D. and A.D., persons under eighteen years of age.**

**S.B.D. and L.D., Appellants,**

v.

**State of Utah, Appellee.**

**No. 20030750-CA.**

Court of Appeals of Utah.

Feb. 8, 2007.

Sara Pfrommer, Law Offices of Sara Pfrommer, Park City, for Appellants.

Mark L. Shurtleff, atty. gen., and John M. Peterson, asst. atty. gen., Salt Lake City, for Appellee.

Martha Pierce and Robert N. Parrish, Salt Lake City, Guardians Ad Litem.

Before BENCH, P.J., BILLINGS and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 We are directed to review this matter a second time in light of the Utah Supreme Court's recent decision in *In re Z.D.*, 2006 UT 54, 147 P.3d 401. We now affirm the judgment of the juvenile court.

## BACKGROUND

¶ 2 On November 17, 2002, seven-month-old Z.D. was diagnosed with a broken femur. After an investigation, the State filed a petition with the juvenile court, alleging that Z.D.'s injury was the result of abuse or neglect by his father (Father) while Z.D. was in Father's care on Saturday, November 16. Father denied any wrongdoing and presented an alternate theory alleging that Z.D. was injured on Wednesday, November 13, when his grandmother bent his leg while placing him in a walker. After a lengthy trial and testimony from medical experts on both sides, the juvenile court concluded that Z.D.'s injury was nonaccidental; that it occurred on Saturday, November 16; and that Father was responsible for the injury.

¶ 3 Father appealed to this court, which reversed the juvenile court judgment based on insufficiency of the evidence. *See In re Z.D.*, 2004 UT App 261, 98 P.3d 40 (subsequent history omitted). This court was, in turn, reversed by the Utah Supreme Court on certiorari review. *See In re Z.D.*, 2006 UT 54, 147 P.3d 401. Both of these published decisions contain extensive factual summaries of the proceedings below, and we do not repeat those facts here.

## ISSUE AND STANDARD OF REVIEW

¶ 4 The issue in this case is the sufficiency of the evidence to support the juvenile court's factual findings. The Utah Supreme Court has directed us to review the record to determine whether the result is "against the clear weight of the evidence" or leaves us "with a firm and definite conviction that a mistake has been made." *In re Z.D.*, 2006

UT 54 at ¶ 40, 147 P.3d 401; *see also* Utah R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

## ANALYSIS

¶ 5 This court previously reversed the juvenile court in this matter. *See In re Z.D.*, 2004 UT App 261, 98 P.3d 40 (subsequent history omitted). In our 2004 decision, we focused on the clear and convincing standard of proof below and determined that "[t]he evidence does not clearly and convincingly establish that Z.D.'s fracture was caused by an axial load sometime on Saturday when he was in Father's care." *Id.* at ¶ 27. Relying on existing caselaw, we concluded that "we cannot say that, given the evidence presented, 'the trier of facts could reasonably conclude that it [was] highly probable' that the fracture was the result of nonaccidental trauma inflicted by Father on Saturday afternoon." *Id.* at ¶ 26 (alteration in original) (quoting *Lovett v. Cont'l Bank & Trust Co.*, 4 Utah 2d 76, 286 P.2d 1065, 1068 (1955)).

¶ 6 The Utah Supreme Court has now redirected the approach to appellate review of a trial judge's factual findings, stating that "it is not the role of the appellate court to reverse a trial court merely because it is convinced that the evidence is inadequate to sustain the result under the standard of proof applied below." *In re Z.D.*, 2006 UT 54, ¶ 40, 147 P.3d 401. Instead, "[t]he result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *Id.*

¶ 7 The supreme court also emphasized a duty on the part of appellate courts to review the entire factual record, or at least the portion marshaled by the parties, when evaluating sufficiency of the evidence claims:

> It is ... the responsibility of the appellate court to provide some indication that it performed its sufficiency of the evidence review in the context of the whole record, or at least that portion of the record to which its attention was drawn by the ap-

pellant's marshaling obligation or the appellee's response to the appellant's marshaled evidence.

*Id.* at ¶ 39. Accordingly, we have reviewed portions of the voluminous record in this case that were identified in the State's brief as bearing on the various fact findings challenged by Father. This review has convinced us that the juvenile court's ultimate factual conclusion that Z.D.'s leg fracture was a nonaccidental injury inflicted by Father on Saturday, November 16, 2002, is not clearly erroneous.[1]

¶ 8 It appears that the crucial determination in this matter is the timing of Z.D.'s injury. If Z.D.'s leg fracture occurred on Saturday while in Father's exclusive care, it is reasonable to infer that the injury was inflicted by Father and was nonaccidental. These inferences arise from common sense and the other evidence in the record, without reliance on the presumption contained in the former Utah Code section 78–3a–305.1. *See* Utah Code Ann. § 78–3a–305.1 (2002) (repealed 2005) ("In determining whether a minor is an abused or neglected child it may be presumed that the person having the minor under his direct and exclusive care and control at the time of the abuse is responsible for the abuse or neglect."). As pointed out by Justice Wilkins,

> [n]o one suggests that this young child broke his own leg. He was too young to engage in any purposeful activity that presented such a danger. He was injured either by the abuse or neglect of his father, as the juvenile court found, or by the abuse or neglect of someone else into whose care his father or mother had placed him.

*In re Z.D.*, 2006 UT 54 at ¶ 58, 147 P.3d 401 (Wilkins, Assoc. C.J., concurring). On the other hand, if the evidence does not establish Saturday as the date of Z.D.'s injury, there is no reason to tie the injury to Father and perhaps less reason to classify the injury as nonaccidental.

¶ 9 The juvenile court found that the injury did occur on Saturday while Z.D. was in his Father's care. This finding is amply supported by the evidence. Despite the painful nature of a fracture such as Z.D.'s,[2] there is nothing in the record indicating that anyone noticed anything wrong with Z.D.'s leg prior to Saturday. On Friday, Z.D. had received a flu shot in his left leg, the same leg that was ultimately determined to be fractured, yet neither his doctor nor the nurse administering the shot noticed anything amiss. Dr. Bruce Herman, a pediatrician who led the investigation into Z.D.'s injury, was also adamant, and corroborated by two other doctors, that both Father and Z.D.'s mother (Mother) had described Z.D. bearing weight on his legs without distress on Saturday morning. Dr. Herman concluded:

> [W]e've talked numerous times about how symptoms would appear after a fracture and as I say, you can't just take a snapshot of a single moment in time. You have to look more at the trend but it would be my opinion that [Z.D.], after the fracture, would not be doing the normal things that the parents described him [sic] on Saturday morning, bouncing with his legs, pushing with both legs and so it would be my opinion that the fracture occurred after that time, after he was last seen to be using his legs normally.

¶ 10 It is also essentially uncontested that Z.D.'s injury occurred before Mother returned home on Saturday. Both Mother and Father testified that something was wrong with Z.D.'s leg by the time Mother returned Saturday evening, and there is no suggestion

---

**1.** This review also raises the possibility that our 2004 decision in this matter should have affirmed the juvenile court based on Father's failure to marshal the evidence in favor of the court's findings. *See State v. Gamblin*, 2000 UT 44, ¶ 17 n. 2, 1 P.3d 1108 ("To successfully challenge a trial court's findings, an appellant must first marshal all the evidence that *supports* the trial court's findings. After marshaling the supportive evidence, the appellant then must show that, even when viewing the evidence in a light *most favorable to the trial court's ruling,* the evidence is insufficient to support the trial court's findings." (citation omitted)). However, in light of the supreme court's express direction to address the substance of Father's claims on remand, we believe that it would be inappropriate for us to resolve this case on marshaling at this point.

**2.** Dr. Herman described Z.D.'s fracture as quite severe and testified that it would be very painful.

of further injury between then and the diagnosis of Z.D.'s fracture the next day. Under these circumstances, we cannot say that the juvenile court's determination that Z.D.'s injury occurred on Saturday while in Father's care is clearly erroneous.

¶ 11 Once the injury is determined to have happened to such a young and nonambulatory child on Father's watch, common sense dictates that Father was either responsible for the injury or should at least have been able to explain how it occurred. Dr. Herman summarized in his testimony that whatever force caused Z.D.'s fracture "would have been more than a normal daycare activity" and that "the person inflicting or the person causing this fracture would know that they were using even more force than it would be generally required or expected with normal daycare activities." Dr. Herman further elaborated:

Q: And would a normal, reasonable person having inflicted this injury, know immediately that such an injury had been inflicted?

A (Dr. Herman): They wouldn't necessarily know that the fracture had been occurred but that there would have been something wrong or that he would have exhibited pain and that he would have exhibited that he was uncomfortable or in pain from that time forward.

Q: So if in fact it did happen that the father inflicted this injury at some point, there's a high likelihood that he would have known that he'd done that?

A: Yes ma'am. I'm not saying—at the time this injury occurred, if he was with someone that it occurred with, they would have known that something was wrong, that the forces that had caused that injury were more than the usual daycare activities, daily care activities.

In light of this clear testimony, and assuming that Z.D.'s injury occurred on Saturday, Father's description of an uneventful day is incredible and therefore suspicious.

¶ 12 After reviewing the record, we are no longer troubled by what the supreme court describes as "an abundance of evidence that explains the absence of symptoms" between Wednesday and Saturday morning. *In re Z.D.*, 2006 UT 54, ¶ 42, 147 P.3d 401. Dr. Herman's testimony was quite clear that any reasonably observant caregiver would have noticed something wrong with Z.D.'s leg once it was fractured, and certainly over the course of several days. Even with the evidence of Z.D.'s wrapping and Tylenol use, his lack of symptoms prior to Saturday and his ability to bear weight on both legs on Saturday morning without distress are evidence that the injury did not occur prior to that time.

¶ 13 We also view the axial/lateral issue identified by the supreme court, and argued earlier to this court, as a bit of a red herring. *See id.* at ¶ 43. The axial/lateral distinction was only relevant to the extent that Father's theory of the injury would have required a finding of lateral or leveraged force. However, while a finding of axial force would have discredited Father's theory of Z.D.'s injury, a finding of lateral force would only have been consistent with Father's theory. The same finding of lateral force would also have been consistent with an unreasonable application of leveraged force by Father on Saturday. Thus, even if the juvenile court's determination that the injury was specifically caused by axial force could be deemed clearly erroneous, the determination that Father applied some type of unreasonable and nonaccidental force to Z.D., resulting in his injury on Saturday, remains adequately supported.

¶ 14 Based on the evidence presented to it, the juvenile court determined that Z.D. was injured on Saturday while in Father's care. It made this determination after hearing evidence from which it could easily infer that Z.D. was uninjured as of Saturday morning but injured by Saturday evening. Father, who is the only person with actual knowledge of Saturday's events, provided no nonaccidental explanation for Z.D.'s injury over this time frame and denied that anything unusual occurred or that Z.D. displayed any sign of injury. Yet there is medical testimony that Z.D.'s fracture resulted from unreasonable force outside the ordinary realm of caregiving, and that the resulting pain would have left Z.D. unconsolable and would have been apparent to Father as Z.D.'s caregiver.

¶ 15 Under these circumstances, the juvenile court's conclusion that Father nonaccidentally injured Z.D. on Saturday is not against the clear weight of the evidence, and we are not convinced that a mistake was made. If this court were the fact finder, it may have decided this case differently, depending on the credibility and demeanor of the witnesses. *See id.* at ¶ 60 (Wilkins, Assoc. C.J., concurring) ("The advantages of being present for the trial, of hearing and seeing all of the participants through the entire proceeding, simply cannot be replicated in the record. No matter how compelling the case made on appeal, it is only a portion of the case seen by the trial judge."). But the cold record on appeal does not reveal the juvenile court's findings to be clearly erroneous. *See State v. Walker*, 743 P.2d 191 (Utah 1987) (Hall, C.J., dissenting) ("[T]he mere fact that on the same evidence this [c]ourt might reach a different result does not justify it in setting aside the trial judge's findings.").

## CONCLUSION

¶ 16 Upon further review of this matter as directed by *In re Z.D.*, 2006 UT 54, 147 P.3d 401, we cannot say that the factual findings of the juvenile court are clearly erroneous. Accordingly, we now affirm the judgment below.

¶ 17 I CONCUR: JUDITH M. BILLINGS, Judge.

BENCH, Presiding Judge (dissenting):

¶ 18 For the reasons so well expressed in the supreme court's decision, I believe the factual findings of the juvenile court are clearly erroneous. *See In re Z.D.*, 2006 UT 54, ¶¶ 40–44, 147 P.3d 401. I therefore dissent.

¶ 19 Under the clearly erroneous standard, we can set aside the factual findings of a trial court only if the findings " 'are against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made.' " *Id.* at ¶ 32 (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). In its opinion reversing our original decision in this case, the supreme

court explained that it is "appropriate when evaluating whether a result was 'clearly erroneous' for the reviewing court to consider the standard of proof the prevailing party below was required to meet." *Id.* at ¶ 40; *see also Lovett v. Continental Bank & Trust Co.*, 4 Utah 2d 76, 286 P.2d 1065, 1067–68 (1955) (requiring a "higher degree of proof to sustain a finding of fact which must be established by 'clear and convincing' evidence" than where a mere preponderance is sufficient). After considering both the record and the high standard of proof required at the trial below, I am convinced that the juvenile court mistakenly ruled against Father, and that its findings are clearly erroneous in that they are not supported by clear and convincing evidence.

¶ 20 In finding that the injury was caused by Father's physical abuse, rather than by the incident involving Z.D.'s baby walker, the juvenile court pointed to Z.D.'s relatively asymptomatic behavior after the walker incident until just prior to the discovery of Z.D.'s broken femur. But the record contains abundant evidence suggesting why Z.D.'s injury could have been difficult to discover earlier. This includes uncontradicted testimony that Z.D. showed no signs of injury when first examined at the hospital; statements from multiple doctors that Z.D. was consolable and had no bruising on the injured leg; testimony that Z.D. was taking painkillers after the baby walker incident for an unrelated ailment; and evidence that Father and Mother routinely swaddled Z.D. in a manner that medical experts testified could have comforted Z.D. despite an injury.

¶ 21 More significantly, there is little evidence, much less clear and convincing evidence, regarding the type and cause of Z.D.'s fracture. The State's medical expert could only testify that he was "51/49" percent certain that the fracture was caused by axial force, and not a type of force consistent with the baby walker theory. The parents' medical expert testified that the absence of bruising and swelling around the injury, the lack of which was noted by multiple doctors, made the State's theory highly unlikely. The juvenile court relied on a statutory presumption, no longer in effect, allowing the court to

presume that Father was responsible for any abuse or neglect during the time Z.D. was under Father's direct care. *See* Utah Code Ann. § 78–3a–305.1 (2002) (repealed 2005). Although the supreme court has directed us to analyze this case without applying the presumption of responsibility against Father, *see In re Z.D.*, 2006 UT 54 at ¶ 44 n. 6, 147 P.3d 401, the majority persists in applying that presumption, albeit under the rubric of "common sense."

¶ 22 The record as a whole reflects that the juvenile court's findings fail to correlate with uncontradicted testimony from hospital personnel. Therefore, without the presumption against Father, there is insufficient evidence on the record concerning the cause of Z.D.'s injury. I am convinced that the State failed to prove its allegations of abuse and neglect by clear and convincing evidence and that the juvenile court's findings "are against the clear weight of the evidence." *Id.* at ¶ 32 (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). In any event, I am left with a "definite and firm conviction that a mistake has been made." *Id.*

¶ 23 For the foregoing reasons, I would reverse.